ALBANY,
October, 1830.

Forsyth
v.
Ganson.

FORSYTH *vs.* JAMES GANSON and others, administrators of
John Ganson.

*Assumpsit* will lie by a stranger against a party for necessaries furnished to
and support provided for one whom such party is under a legal obligation
to maintain : *so held,* in a case where on the division of the property of a
father among his sons, one of them, in consideration of receiving a greater
portion of the estate than his brother, assumed to provide for his father and
his *step mother; after the death of his father, he refused to provide for his
step mother, she was supported by her own son, and an action brought by*
him against the party receiving the property was sustained.

In an action against administrators, where there are *several,* the admission
of *indebtedness* by *one, it seems,* will not entitle the plaintiff to recover.

Such evidence is proper as a link in the chain of testimony, but unless the
admissions of all the administrators are shewn, the party may require the
judge to charge the jury to exclude the testimony from their considera-
tion.

THIS was an action of assumpsit, tried at the Livingston
circuit in May, 1828, before the Hon. JOHN BIRDSALL, then
one of the circuit judges.

The action was brought for the support and maintenance
of Esther Ganson, the mother of the plaintiff, and the step
mother of the intestate. It appeared when the father of the
intestate married Esther Ganson, she was possessed of prop-
erty to some considerable amount ; in 1804, the father of
the intestate bought a place and went into the business of
tavern keeping ; his sons, *John* the intestate and *James* the
administrator, lived with him after they arrived of age and
carried on business together. In 1811, a division was made
of all the property between John and James, John receiving
$1000 more than his brother, and agreeing to support his
father and step mother, and accordingly did so until the
death of his father, which happened about two years after the
division of the property ; after the death of his father, John
refused to continue to support his step mother, when her
son, the plaintiff in this cause, took her to his house, and now
brought his action against the administrators of *John,* to re-
cover for her support and maintenance. On the trial of the

cause an admission of *James*, the administrator, made since the death of the intestate, proving the whole case, was received in evidence, though objected to, but the point was reserved. Independent of that admission, the case was established by other evidence. The defendant claimed a nonsuit, which was refused, and the judge charged the jury to inquire whether a sum of money or other funds had come to the hands of the intestate for the support of Esther Ganson; whether that fund had been expended; or whether, for a good consideration, the intestate had become liable for the support of Esther Ganson. If they found that no fund had been created, or that it had been expended, or that the intestate was not liable by contract for the support of Esther Ganson, then he directed them to find for the defendants, otherwise for the plaintiff. The jury found for the plaintiff for $297,50, subject to the opinion of this court whether the action could be maintained in the name of the present plaintiff. The verdict was now moved to be set aside.

*A. Dann* and *J. A. Spencer*, for the plaintiff. The intestate having agreed to support his father and step mother for a good and sufficient consideration, was under both a moral and legal obligation to perform his promise. A person who is under such obligation to support another, and neglects or refuses to do so, is liable to an action at the suit of any one who furnishes such support. 8 *Johns. R.* 72. 10 *id.* 38, 249. 13 *id.* 480. 14 *id.* 188. 16 *id.* 243. 1 *Caines*, 585. 3 *Bos. & Pul.* 252. 5 *id.* 148. 2 *Mass. R.* 415. 1 *Esp. R.* 270. 2 *id.* 739. 3 *id.* 1. 1 *H. Black.* 90. 4 *East*, 77. 2 *Lev.* 210. 1 *Saund.* 264, n. 1. *Hammond on Parties*, 9, 10. The admissions of the administrator were admissible in evidence. 5 *Pick.* 217, 391. 7 *T. R.* 659. 4 *Cowen*, 355. 7 *id.* 174.

*J. Dickson*, for defendant. The admissions of the administrator ought not to have been received in evidence; an administrator may take a case out of the statute of limitations by his admissions, but he cannot charge an estate by creating a debt in that way. 6 *Johns. R.* 273. 4 *Cowen*, 293. The intestate was under no legal obligation to support his

ALBANY,
October, 1830.

Forsyth
v.
Ganson.

step mother. 16 *Johns. R.* 281, 583, *n.* 7 *Cowen,* 235. A mere moral obligation is not sufficient to raise an implied assumpsit; but if, under the circumstances of this case, an assumpsit might be implied, an action could be maintained only in the name of Esther Ganson. The plaintiff in this case cannot maintain an action; for with him there is no privity of contract; the support and maintenance provided by him for his mother, as it respects the intestate, was a voluntary courtesy, for which no action lies. 10 *Johns. R.* 361. 13 *id.* 496. 14 *id.* 87. In the cases cited on the other side, in which actions were maintained for necessaries furnished to third persons, the defendant was under both a legal and moral obligation to do what was done by the plaintiff in his stead.

*By the Court,* SUTHERLAND, J. If the plaintiff can recover at all, it must be on the ground that the intestate, John Ganson, was legally bound to support his step mother, Esther Ganson, and that having refused to provide for her, the law implies a promise on his part to pay the plaintiff whatever he has necessarily expended in her support. There is no evidence, either of a request on the part of the intestate to the plaintiff to provide for Esther Ganson, or of any express promise to pay him for supporting her. The jury, by their verdict, have found that the intestate either had funds in his hands which he was bound to apply to the support of his step mother, or that upon a good consideration he had promised to provide for her; and I think the verdict is warranted by the evidence in the case.

After the father had given up all his property to his sons John and James, and they had divided it between them, Timothy Beckus testifies that James, speaking of the division to John, said, "I consider that I have given you $1000 the best of the bargain. I have had a family while you have had none, *and I expect the old people will remain with you.*" James made no reply; but that he understood that he was to support his father and step mother is shewn by the testimony of Edward Waterous, who states that after the division between John and James, he heard John say that the old people were to live with him. They accordingly did remain with him

during his father's life, and the step mother remained some time afterwards without any objection or complaint on the part of the intestate.   John Hascal also testified that he heard the father say in John's presence that he had given up all his property to him, and that he was to maintain him and his wife ; and the same witness further stated that he had heard a great deal of conversation in the Ganson family about their property, and that he understood from such conver-sation that John was to support the old people.   This ev-idence warrants the conclusion that, in the division of the property of the father between the sons, the support of the parents was taken into consideration in the portion allotted to John, and that he undertook, in consideration of an extra allowance then made to him, to take care of and provide for the old people during their lives.

The admissions of James Ganson, one of the defendants, as testified to by George Hosmer, were competent evidence at the time they were received.   Where there are several executors or administrators, the admission or confession of one will not charge the others and enable the plaintiff to re-cover against all; and the reason is, that each executor or administrator is responsible for his own acts only, and shall not be charged with the devastavit of his companions.   One executor, therefore, cannot confess a judgment which shall bind his co-executors.   *Toller's Ex.* 367.   1 *Strange,* 20.   *Hammon* v. *Huntley, and others, ex'rs,* 4 *Cowen,* 494.   *James* v. *Hackley,* 16 *Johns. R.* 277.   In *James* v. *Hackley* it was contended that the acknowledgment of one of the adminis-trators was *conclusive* evidence of the debt against all ; but it was held that the other administrator was not concluded from shewing that the debt never existed or that it had been paid. The opinion of Judge *Spencer* in that case seems to concede that the admission of one administrator is *prima facie* evidence against all ; but this appears to me to be carrying the doc-trine too far.   Each administrator may afford evidence against himself by his admission ; and if the admissions of each are shewn, it is equivalent to a joint admission by all.   It is com-petent, therefore, to prove the separate admission of each ad-

ministrator of the debt; but such admission by one alone, where there are several, will not entitle the plaintiff to recover: though properly admitted therefore at the time, it should be excluded from the final consideration of the jury, unless other evidence is produced which will bind or conclude the other administrators. Here the objection was simply to the admission of the evidence. The objection was properly overruled. The charge of the judge is not objected to. He may have directed the jury to disregard this evidence.

The remaining inquiry is, (admitting the intestate to have been legally bound to support Mrs. Ganson,) whether this action can be maintained in the name of the present plaintiff. I am of opinion that it can. It appears to me to be analogous to the case of necessaries furnished to a wife or infant child for whom the husband or father improperly neglects or refuses to provide. In such cases the law raises an implied promise, on the part of the husband and father, to pay for such necessaries. 8 *Johns. R.* 72. 13 *id.* 480. 14 *id.* 188. 1 *Esp.* 270. 2 *id.* 739. 3 *id.* 1. 1 *H. Black.* 90. 3 *Bos. & Pul.* 252. 5 *id.* 148. 16 *Johns. Rep.* 281. In *Mure* v. *Craig*, 5 *Bos. & Pul.* 148, the husband had expressly covenanted with A., as trustee for his wife, to pay his wife a weekly allowance of five shillings; the wife lived with A., and the husband having neglected to pay the stipulated sum, A. brought an action of *indebitatus assumpsit* against him for board and other necessaries furnished to his wife, and the action was sustained, notwithstanding the express covenant on which it was admitted the plaintiff might have sued.

The intestate in this case being legally bound to provide for Mrs. Ganson, the services and supplies afforded to her by the plaintiff were advantageous to the defendant, and may well be considered as having been rendered at his request.

New trial denied.