## M'INTIRE *vs.* MORRIS' ADMINISTRATORS.

Where a person resident here executed a power of attorney to another also
residing here, to obtain possession of an estate in the *West Indies*, con-
sisting of real and personal property belonging to the constituent, to con-
vert the same into money, and pay over the proceeds; and the parties en-
tered into an agreement, whereby the *attorney* covenanted faithfully to
execute the trust at his own proper costs and charges, and if unsuccessful,
to charge nothing for his services and expenses; and the *constituent* cov-
enanted that the attorney should be remunerated and paid on his realizing
the property and paying over the same, such amount or sum of money as
should be adjudged and considered by two individuals named in the agree-
ment, *a just and fair compensation* for his time, trouble and risk; and the
attorney obtained possession of the property, disposed of the same, and
paid over the proceeds before the death of the constituent, after which an
award was made by the parties named in the agreement that the *adminis-
trators* of the constituent should pay to the attorney a *certain sum*, as a just
compensation for his time, trouble, risk, costs and charges in the business,
*it was held*, that the amount thus awarded was recoverable under a count
of *quantum meruit*, in an *action of debt* : the agreement having been *sub-
stantially*, although not *literally* performed on the part of the attorney.

*It was further held*, that the stipulation, in respect to the compensation, was
not in the nature of a *submission to arbitration*, but a *covenant* to secure
compensation, and was not affected by the death of the constituent.

How far the admissions or acts of *one administrator*, in reference to the ac-
knowledgment or liquidation of demands against the estate which they
represent, are obligatory upon his *co-administrator*, and *binding upon the
estate*, discussed and considered, and various cases cited and comment-
ed upon.

THIS was an action of *debt*, tried in September, 1833, be-
fore the Hon. OGDEN EDWARDS, one of the circuit judges.

The plaintiff declared on a special agreement entered into
between him and *Eleanor Morris*, the intestate, dated 19th
April, 1819, in which, after reciting that Mrs. Morris was en-
titled to the moiety of a certain estate in the island of *Jamai-
ca,* and to certain personal property bequeathed by her aunt
Mary Hedman; that from lapse of time difficulties had aris-
en, rendering it necessary to expend monies to obtain posses-
sion of the property; that Mrs. Morris was unwilling to make
the necessary advances; that the plaintiff was willing to un-
dertake the agency of the business at his own costs and

charges, and at his own risk ; and in case of failure to make no charge for services or expenses ; the plaintiff covenanted with Mrs. Morris that, on being duly empowered, he would use his best endeavors to obtain possession of the estate and property, at his own costs, charges and risk ; that *he would give good and sufficient security for the faithful performance of such agency and trust,* and the faithful payment of such monies as might be realized, after being suitably remunerated, *if the same should be required.* Mrs. Morris, on her part, covenanted that the plaintiff should be remunerated and paid, on his realizing and receiving any sum or sums of money, after paying his costs and disbursements, *such amount or sum of money as should be adjudged and considered by J. Bristed and J. W. Brackett as a just and fair compensation* for his time, trouble and risk in the matter, upon hearing the statements, allegations and proofs of the parties ; and provision was made for the appointment of a substitute, in case of the death of either Bristed or Brackett ; and it was declared that their judgment and determination respecting the compensation of the plaintiff in the premises, should be final and conclusive. The agreement contained a further stipulation, that in case of the death of the plaintiff, after having put the business into successful operation, and expended monies therein, and before the completion thereof, and before the actual receipt of monies therefrom, his heirs or legal representatives should receive a reasonable reimbursement and compensation therefor, to be fixed on and determined as aforesaid, when Mrs. Morris *or her legal representatives* should have realized and received funds arising from the estate aforesaid : *provided,* that the plaintiff should *immediately give such full and ample security* to James Buchanan, as *trustee* for Mrs. Morris, as the said J. B. should approve ; that he should in all things relating to the premises, act under the control and by the direction of J. B., and should, from time to time, pay over to him all moneys received out of the said estate, &c. After setting forth the agreement, the plaintiff averred that he used his best endeavors to recover the property, and convert it into money ; that he employed agents, and expended large sums of money in and about the business ; that he was ready and willing to give the security

UTICA,
July, 1835.

M'Intire
v.
Morris' Administrators.

specified in the agreement, *but no such security was requir-
ed of him* ; that he realized and received large sums of mo-
ney of the *personal estate* mentioned in the agreement, and
paid over the same to J. B. as trustee of Mrs. Morris, and
recovered and obtained for her possession of a large real es-
tate in Jamaica, of the value of $26,000, and did all things
which by the agreement he had undertaken to do—acting
under the control and by the direction of J. B., and paying
over to him all moneys received.   The plaintiff then further
averred, that Mrs. Morris had died intestate, and that admin-
istration of her estate had been committed to *Reuben Clark*
and *Isaac Morris*, the defendants in this cause, on the 22d
March, 1826 ; that *Brackett*, one of the *nominees* mentioned
in the agreement, died on the 31st March, 1826, without hav-
ing made any decision or award relative to the compensation
of the plaintiff, and *W. P. Hallett* was substituted in his
stead, who, together with *Bristed*, on the 20th November,
1826, did award and determine that there was due and ow-
ing from Mrs. Morris in her lifetime to the plaintiff, $4,817,
84, as a just and fair compensation for the time, trouble, risk,
costs and charges of the plaintiff in obtaining the one-half
of the said estate, that such sum be paid to him by the ad-
ministrators of Mrs. Morris within ten days after notice, &c.
of which award notice was given, &c. whereby, &c. yet,
&c.   This declaration contained also a count on a *quantum
meruit*, for services rendered and expenditures incurred by
the plaintiff, in and about the obtaining possession of the es-
tate and realizing monies, &c., averring that the plaintiff
was entitled to other $4,817,84, whereof Mrs. Morris in her
lifetime had notice, &c.   The defendant pleaded *non est
factum*, under a written stipulation of the attornies for both
parties that such plea might be interposed, and that *the
cause should be tried on the merits*.

On the trial, the articles of agreement declared on were
read in evidence.   The plaintiff then offered to prove the
death of *Brackett*, the substitution of *Hallett*, and the making
of the award as set forth in the declaration, for the purpose
of showing a *liquidation* under the special contract, and as
evidence of a waiver of any condition precedent.   This evi-
dence was objected to, and excluded.   A power of attorney

from Mrs. Morris to the plaintiff, of the same date with the agreement, giving the plaintiff authority in her name to demand and recover the property in Jamaica, and a power of substitution from the plaintiff to one W. J. Murphy, were then read in evidence under the *second count* of the declaration ; and the plaintiff offered to read a deposition of Murphy, taken under a commission, to prove the services of the plaintiff, the sale of the property in Jamaica, and the payment of the proceeds to Mrs. Morris. The defendants objected to this evidence, on the ground that the action of *debt will not lie upon an unliquidated demand.* The plaintiff engaging to prove an actual liquidation of the amount, the judge overruled the objection, but directed the plaintiff in the first instance to produce proof of the liquidation. The plaintiff then offered to prove that both the administrators were notified to appear before Bristed and Hallett, for the purpose of ascertaining the amount of the plaintiff's compensation ; that the plaintiff and *Clark, one of the administrators*, attended, and that an award was made as set out in the declaration ; which evidence was objected to and rejected. The plaintiff having failed to produce evidence satisfactory to the judge of the liquidation of the demand, all other proof offered by the plaintiff to establish the demand was rejected by the judge, and a *nonsuit* was directed to be entered, which was now moved to be set aside.

*D. Lord, jun. & S. Stevens,* for the plaintiff.

*S. P. Staples,* for the defendants.

*By the Court,* SUTHERLAND, J. There are two principles involved in this case, in relation to which there can be no dispute. *First.* That if by the true construction of the agreement of the 19th of April, 1819, between the plaintiff and Mrs. Morris, the giving of the security mentioned in the agreement was a condition precedent on the part of M'Intire, and was to be given at all events, he cannot recover upon the special count in his declaration, nor upon any other count which can be framed on the special contract, it being a

conceded fact in the case that such security was never giv-
en nor offered.   *Secondly.* It is equally clear that he cannot
recover upon the common count, which is a *quantum meruit
in debt* for services rendered in recovering an estate in the
West Indies, and receiving and realizing large sums of mo-
ney due to the defendats' intestate in relation thereto, unless
he can show that the amount of his compensation has been
agreed upon or liquidated by the intestate or the defendants,
or so far liquidated as to be easily reduced to a certainty;
for debt will not lie for unliquidated damages; it must be for
a sum certain, or which is capable of being easily reduced
to a certainty.   1 *Chitty's Pl.* 101.   *Comyn's Dig. a,* 8, 9.
*Bull. N. P.* 167, *ch.* 4, *of Debt.*

Conceding for the present that the giving of the security
was a condition precedent, and that the plaintiff therefore
cannot recover upon the special agreement, let us consider
whether the evidence given and offered to be given by him
was sufficient to entitle him to recover upon his *quantum
meruit.*   He proved and read in evidence, to support this
count, 1. The power of attorney from Mrs. Morris to him-
self of the 19th April, 1819, as a retainer for services to be
rendered, which was given at the same time, and is to be
considered a part of the special agreement; and 2. The
power, by way of substitution, from the plaintiff to Murphy;
and then, 3. Offered to read the testimony of Murphy, ta-
ken under a commission, to prove the services rendered by
the plaintiff, the sale of the property under the power of Mrs.
Morris, and the payment of the proceeds to her.   To the
introduction of this evidence the defendants objected, on the
ground that it showed only an unliquidated claim or de-
mand for services rendered; and for such a demand, *debt*
would not lie.   To obviate the objection, the defendants of-
fered to prove by William P. Hallett that the witness and
one Bristed liquidated the amount of compensation, to which
the plaintiff was entitled for these services, under the pro-
visions for that purpose contained in the original agree-
ment between the plaintiff and Mrs. Morris; that the plain-
tiff and Clark, one of the administrators and also one of the
defendants, (both of the administrators having been notified,)
were present at such liquidation and assented thereto;

and the award made by Hallett and Bristed was also offer-
ed in evidence. This whole evidence to show a liquidation
of the demand was objected to, and excluded by the judge.
The grounds upon which it was excluded are not stated in
the case. But the counsel for the defendants maintain its
correctness upon two grounds: 1. That the death of Mrs.
Morris revoked the agreement on her part to submit the
question of the amount of the plaintiff's compensation to ar-
bitrators, (as contained in the original contract between
them,) and that the decision or award of Hallett and Bristed
therefore was for that reason made without authority ; and
2. That the assent of the defendant *Clark* to the liquidation
by Hallett and Bristed was not binding as an original liqui-
dation or statement of the account, because the admission
or act of one of two administrators cannot charge or affect
the other, not present or assenting thereto.

A mere submission to arbitration, or an agreement to sub-
mit, is undoubtedly revoked by the death of either of the par-
ties before the award is delivered. *Caldwell on Arb.* 29, 30.
*Potts* v. *Ward,* 1 *Marsh. R.* 366. 4 *Com. Law R.* 341, *S. C.*
*Kyd on Awards,* 29. It is a naked power, which either party
may revoke before it is executed, and which is terminated of
course by the death of either party. *Hunt* v. *Rousmanier,* 8
*Wheat.* 201. But this was not a mere submission to arbitra-
tion ; it was a covenant on the part of Mrs. Morris, in con-
sideration of certain services to be rendered by M'Intire, in-
volving the expenditure of time, labor and money, to afford
him a fair and just compensation, to be settled and determin-
ed by two impartial individuals. It was not the submission
of a pre-existing claim or demand to the settlement of arbi-
trators, but it was a covenant to pay him for services to be
rendered what they should be worth, the amount to be ascer-
tained and determined in a specified manner. The mode of
liquidating the amount was part and parcel of the covenant ;
it entered into and formed part of the consideration of the
agreement. The plaintiff might well have objected to make
the advances, and incur the hazard and expense imposed and
required by this contract, upon the strength of the mere cov-
enant of Mrs. Morris to pay him what his services were

worth.   He might well have anticipated that there would be difficulty in agreeing upon or adjusting the amount—that it might involve trouble, and expense and litigation.  The agreement to leave the matter to the absolute determination of two impartial and intelligent individuals would obviate these difficulties, and might have had a controlling influence with the plaintiff in inducing him to enter into the agreement.

But the contract itself clearly manifests the intention and understanding of the parties, that M'Intire's claim to compensation, *and the manner of adjusting it,* should not be affected by the death of either party.   It contains the following provision : "And it is hereby mutually agreed, that in case of the death of said William M'Intire, after having put the business aforesaid into successful operation, and expended monies thereon, and  before the completion thereof, and before the actual receipt of monies therefor, the heirs, executors, administrators or legal representatives of the said William M'Intire, shall receive a reasonable reimbursement and compensation therefor, *to be fixed and determined as aforesaid, when the said Eleanor Morris, or her legal representatives* shall have realized and received funds arising from the estate aforesaid."  Here is an express provision that M'Intire's death before the final completion of the business shall not affect his claim to compensation, but that it shall devolve upon his *representatives,* to be adjusted between them and Mrs. Morris, or her *representatives, in the manner particularly specified in the agreement:* that is, by the determination of the two individuals there named, or their substitutes, in case of their death.   The whole business, as I understand from the case, was concluded on the part of M'Intire, and the funds collected and paid over to Mrs. Morris or her authorized agent, before her death, leaving nothing to be adjusted but the plaintiff's compensation for his services.

I see no legal difficulty in giving effect in this respect to what was obviously the intention and understanding of the parties.   This provision does not fall within the principles which apply to submissions to arbitration, or any other mere naked power.   The mode of adjusting the plaintiff's compensation, prescribed in the contract, is no more affected by the death of either party, than is his title to compensation itself.

The award was therefore made by competent authority, and was legal evidence of a liquidation and settlement of the plaintiff's claim, and ought to have been received as such to support the common count.

Whether the appearance of one of the administrators before the arbitrators was binding upon the defendants as evidence of their assent to the award as an account stated, or admitted, or otherwise, it is unnecessary to decide. One executor cannot confess a judgment which shall bind or conclude the rest. *Elwell* v. *Guarl et al.*, 1 *Strange*, 19. *Toller's L. of Ex.* 367, 8. One of several executors or administrators cannot create a debt against the estate by his act or admission. They may sever in their pleas, and the one most beneficial to the estate shall prevail. In *James & Flack* v. *Hackley and others, adm'rs*, 16 *Johns. R.* 273, it was held that the admission by one of the administrators of a debt due from the intestate, did not conclude the other from showing that it had been paid. It seems there to have been considered *prima facie* evidence against all, liable however to be repelled by proof of payment, &c. by the other administrators. The distinction seems to be, between creating a debt and acknowledging one really existing—a distinction very difficult in many cases to understand, and practically to apply. In *James* v. *Hackley*, the only evidence given by the plaintiff of his demand, was the written admission of the balance due, signed by one of the administrators. Judge Spencer, who delivered the opinion of the court, said that the admission by Hackley, one of the administrators, did not preclude Ford, the other, from showing that the debt had been paid. To maintain the contrary, he remarked, would be subjecting the estate of his intestate to entire destruction, if one of the administrators is faithless to his trust; that the issue being joined on the plea of Ford, it was competent for him to make any defence under the issue, showing that there was no debt due to the plaintiffs, or that it had been paid. *Harmon* v. *Huntley and others*, 4 *Cowen*, 493, was an action of assumpsit against three executors to recover the consideration for land sold by the plaintiff to defendant's testator. The plaintiff in the course of the trial offered in evidence

a letter purporting to be written after the commencement of the suit, by two of the defendants to the plaintiff, acknowledging a balance of $240 to be due from the testator's estate to him. This was objected to, but admitted; and upon an application for a new trial, the verdict was set aside on that ground. The marginal note of the case is, that "The confession by one executor of a debt due from his testator, is not admissible evidence in a suit for the debt against his co-executor, to establish the original demand." Judge Woodworth says, it is held, that if one executor confess a judgment, it shall not conclude and bind the rest. It follows, he continues, that he cannot do indirectly, what he is prohibited from doing directly. If such *evidence is competent against both*, it is in effect clothing one with power to do an act which shall give a right of recovery. Whether this is done by confessing judgment, or by making admissions, that they may be used as evidence to produce the same result, is, he remarks, in his view, the same thing. Here the admission of one executor was held inadmissible as against the other, differing from the case of *James* v. *Hackley*, as I understand it, in this—that there it was held competent and *prima facie* evidence against all, but liable to be repelled and disproved. In *Forsyth* v. *Ganson*, 5 *Wendell*, 558, the doctrine of *Hammon* v. *Huntley* was followed, and it was there held, that in an action against several administrators the admission of indebtedness by one would not entitle the plaintiff to recover; that such admission was competent evidence as against the party making it; but that unless it was accompanied by other evidence of the debt which would bind the other defendants, the plaintiff could not recover. Where the original indebtedness is proved, a statement or admission of the balance due, by one of several executors or administrators, is competent evidence against all; but the others are at liberty to repel it by shewing that there was in fact nothing, or not so much due, or that it had been paid or extinguished. According to this principle, the appearance of one of the administrators before the arbitrators, and his implied assent to the award, were probably competent *prima facie* evidence against both. But I hold the award in this case to have been well made, under the authority of the original con-

tract between the parties, notwithstanding the death of Mrs. Morris. That award, liquidating the plaintiff's claim and reducing it to certainty, removes the formal objection to the plaintiff recovering upon his common count.

It only remains to inquire upon this branch of the law, whether the plaintiff was at liberty to waive the special agreement and resort to his *quantum meruit.* Upon this point the cases of *Jewell* v. *Schroeppel,* 4 *Cowen,* 564, of *Dubois* v. *The Delaware Canal Company,* 4 *Wendell,* 285, and of *Peltier* v. *Sewall,* 12 *id.* 386, are entirely decisive. The plaintiff has done every thing which he was bound by the special agreement to do, except the giving of security. That, according to the defendant's construction of the contract, was to have been given immediately after its execution. Mrs. Morris, or her agent Buchanan, knew perfectly well that the security had not been given ; and with a full knowledge of that fact, they permitted the plaintiff to incur all the trouble, hazard and expense of establishing Mrs. Morris' title to the estate, which resulted in the sale by Murphy, the plaintiff's substitute, and payment of the proceeds over to Buchanan, the agent of Mrs. Morris. It is a clear case of a special agreement, substantially but not formally executed, in which the plaintiff has a right to resort to his common count. It is unnecessary, therefore, to discuss the question whether the giving of security by the plaintiff was or was not a condition precedent, the performance of which was indispensable to his right to recover on the special agreement. The different provisions of the contract are not entirely harmonious in that respect, and the actual intention of the parties is not entirely clear.

The stipulation of the parties that the cause should be tried and disposed of upon its merits, has also rendered it unnecessary for me to pay any attention to the form of the pleadings.

A new trial must be granted, costs to abide the event.