## HALL v. BOYD.

A judgment confessed by one executor without the knowledge of his co-executor, for a claim, part of which was barred by the statute of limitations, does not bind the estate of the testator; although the executors had a power to sell for payment of debts.

In error from the Common Pleas of Northumberland county.

*July* 19. In 1813 Wilson made his will, devising his estate among his widow and children, and empowering his executors to sell his real estate for payment of debts. His executors were Mary Wilson his widow, and James Boyd, both of whom joined in the probate in 1814. Some time in 1815, as it appeared, Boyd, one of the executors, signed a settlement of his testator's accounts with Hall, executor of Hall, in which a balance was admitted to be due to Hall's estate of $1390. This account was composed of several items, among which was a bond dated in 1795, on which a credit was endorsed in 1797. Other items were due on simple contract prior to 1800: the price of a horse sold in 1806 and cash paid in 1812 were also included.

In 1831, the amount of a book account due by Hall to Wilson was deducted, and judgment confessed for the balance of the settlement with interest, by Boyd, "acting executor of Wilson." At that time Mary Wilson, the co-executrix, was living.

On a *sci. fa.* to continue the lien, and *quare ex. non* against the administrators *de bonis non* and the heirs and devisees of Wilson, pleas were filed, and the cause came on to be tried before ANTHONY, P. J. His honour left it to the jury to say whether there had been any collusion or fraud by Boyd in confessing the judgment: considering the judgment unaffected by the want of knowledge of its confession in the co-executrix.

*Jordan* and *Greenough*, for plaintiffs in error.

*Hegins*, contrà.

*July* 27.   COULTER, J.—This cause exhibits a succession of errors, differing only in intensity from the beginning to the end. One of them, however, pervades the whole process, and, being radical and fatal, saves the labour of noticing the rest. William Wilson died before the 25th of May, 1814, his will being admitted to probate on that day.   On the 28th of December, 1831, John Boyd, one of his executors, confessed a judgment to Robert C. Hall, acting executor of Charles Hall, deceased, for $2756 02. At that time the other executor, to wit, Mary, the widow of the testator, was in full life and one of the acting executors of said will, having joined in the probate thereof.   In 1837, to June Term, the present *scire facias* was issued to bring in Abbot Green and Abraham S. Wilson, administrators *de bonis non* of Wiliam Wilson, deceased,—both of the executors being then dead,—and also the heirs of the deceased, as terre-tenants, to show cause why execution should not issue against the lands of the deceased, &c.   Various pleas were put in by the defendants, to some of which there was a demurrer, and to one a replication.   Several questions are presented by the record, one of which only I will consider : that is the validity and effect of the judgment confessed by John Boyd on the 28th of December, 1831.   It may be that the lapse of time would not shield the defendants, if every thing else in the proceeding was right.   William Wilson directed by his will,—which is not set out, but merely referred to in the paper book,—that his land should be sold by his executors, after his death ; and that his debts should be paid out of the proceeds, if not previously satisfied.   This is the substance of the provision as I recollect it, from its being read at bar.   In the case of Alexander *v.* McMurry, 8 Watts, 504, this court decided that a devise of real estate to executors for the purpose of selling to pay debts, created a trust in the executors for the benefit of creditors ; and that, in such case, there is no limitation to the lien of the debt, short of a presumption of payment from lapse of time.   But in such cases, undoubtedly, the debt must be clearly and lawfully established, and must be such as by every reasonable intendment and implication was within the testator's intention at the time he made his will.   No man could suppose that by such a provision he was about to raise up from the dust of time and oblivion the transactions of his whole life, to be investigated after his death ; nor that he was waking up into life and activity evidences of debt, which in the contemplation of the parties and the provisions of law were satisfied or dead.   The decision of Alexander *v.* McMurry goes on the ground that the executors were guilty of *laches* and gross negli-

gence, in not selling the property and performing the trust confided to them by the testator; and that such negligence ought not to prejudice the creditor. But in the case in hand, the claim of Charles Hall originated in 1795, in the shape of two bonds, as the statement filed shows, on one of which, a credit is endorsed in 1797. The other claims consist of charges in the book of Charles Hall, in 1795, except a small item of $60, in 1812. This statement, which is filed in the original judgment against John Boyd, executor, appears to be dated in 1815, and is signed by Charles Hall and John Boyd. After that statement, the matter rests until 1831, a period of *sixteen years*, when John Boyd confesses the judgment. Thus, from the last endorsement on the only bond on which a credit was entered, a period of *sixteen years* had elapsed; and on the other items of charge, a period of *eighteen years* previously to the death of William Wilson, and from that time a period of *seventeen years* had run before the confession of judgment by John Boyd, at which time interest to the amount of $1600 was added. A period of about *thirty-four years* had run after the last act done by the deceased, recognising any part of the demand at the time of confession of judgment by one of his executors; and *seventeen years* had expired before that same executor recognised the claim by signing the settlement. The other executor might have pleaded the statute of limitations, which had run more than twice against the body of the book account at testator's death, if she had been advised of the matter. And she might have had it in her power to show a liquidation of the alleged bonds, or some sufficient reason why they ought not to be paid. These circumstances occasion great doubt and hesitancy in admitting the application of the principle ruled in the case of Alexander *v.* McMurry, to the case. In that case, the debt was clearly and indisputably established according to law. We cannot say as much for the claim in the case in hand. But admitting that the rule in that case does apply, still there must be adequate evidence of the debt, and that will bring us to the main question in the cause. Did the acknowledgment of the debt by one of the executors, when the other was in full life and acting as executor, bind both or make the estate liable? And did the subsequent confession of judgment, under like circumstances, bind both executors, and the estate of Wilson? It was decided in Heisler *v.* Knipe, 1 Brown's Rep. 319, that a judgment against one administrator did not bind the other, or the estate of the deceased. In Forsythe *v.* Ganson, 5 Wend. 558, it was decided, that in an action against administrators,

where there are several, the admission of indebtedness by one will not entitle the plaintiff to recover. The promise of one executor where there are more who have duly qualified, will not take a case out of the statute of limitations. Fritz *v.* Thomas, 1 Whart. 66; Reynolds *v.* Hamilton, 7 Watts, 420. When several persons are appointed executors, they are generally regarded in law as one person: Bacon's Abr. tit. *Exec.* D. 1; and therefore the acts done by one which relate to the testator's goods, such as sale, delivery, possession, &c., are considered as equivalent to the acts of all, as they possess a joint authority. But in relation to their several responsibilities, the rule is different. They are liable, personally and individually, no further than assets have come into their hands, or where they have done some act which the law considers as equivalent to an admission that the assets were in their hands and power, and culpably and negligently parted with. But if an acknowledgment of one could bind the whole, this salutary and just rule would cease to afford protection to the others. One might charge the estate contrary to the will of all the others, being a majority of those who represented it, and thus seriously affect them indirectly without their knowledge. Such a rule would be inconvenient, unjust, and extremely hazardous to executors and to estates. And whether the mischief was accomplished by confessing judgments, or by making admissions on which judgments could be obtained, is of no manner of consequence. The mischief is the same, and the remedy is the same. The evil is identical in character and magnitude, in the one case as in the other. The law obliterates both. The law gives to each executor the right to plead a separate plea to protect himself; and the other cannot deprive him of that right, or the estate of his judgment and assistance. Although each executor may control and dispose of the chattels of the estate, he cannot by his sole act affect or bind his co-executors, so as to make them personally responsible, which he might do, if he could admit debts or confess judgments without their knowledge or consent: 4 Cow. 493; Tol. on Ex. 359; 1 Atk. 460. The original judgment was therefore invalid as against the other executor, who was in full life and acting as executor, and also invalid as against the estate. The judgment on the *scire facias* against the administrators *de bonis non, cum testamento,* &c., and the heirs of Wilson, as terre-tenants, was erroneous: as it could only be sustained by a valid judgment, which bound both executors and the estate, and it is therefore reversed.

Judgment reversed.