Montgomery Special Term, June, 1848.   *Paige*, Justice.

## Peter Elwood and George Elwood *vs.* Abraham H. Deifendorf, Cornelius Deifendorf, and David Deifendorf.

As a general rule, sureties are entitled to the benefit of all securities which may have been taken by any one of them to indemnify himself against their joint liabilities for their principal.   The security taken by one of the sureties enures to the benefit of all.

A party who objects to evidence, or to the competency of witnesses, should state specifically the grounds of his objection.   It is not sufficient to object, generally, that the evidence is illegal, or the witness is incompetent; but the party objecting must put his finger on the very point, to apprize the court and his adversary of the precise objection he intends to make.

The admissions of an executor or administrator cannot be received in evidence, either as against his co-executors or co-administrators, or as against heirs and devisees.

A decree of the surrogate, made on the final settlement of the accounts of executors, is no bar to a suit by creditors who were not parties to the proceeding before the surrogate, and upon whom no citation was served.

The taking of a note, either of a debtor or of a third person, for a precedent debt, is no payment, unless it be expressly agreed to take the note as payment and to run the risk of its being paid; or unless the creditor parts with the note, or is guilty of laches in not presenting it for payment.

And *it seems* that a promissory note of the debtor, or of one of two or more joint debtors, given for a precedent debt, is not a satisfaction of such precedent debt, even although the creditor expressly accepts the note in satisfaction.

A negotiable note may operate *sub modo*, to satisfy a debt; as for the purpose of enabling a surety to bring an action for money paid, against the principal.

The taking a new security from the principal debtor, for an old debt past due, payable at a future day, without an agreement to extend the time of payment, does not discharge the surety.

To discharge a surety, by giving time to the principal debtor, not only the fact of suretiship must exist, but it must be known to the creditor at the time of doing the act complained of.

A surety has no cause of action against the principal debtor until he has actually paid the debt.

His remedy, on payment of the debt, is not on the original security, but is an action for money paid for his principal.   The original debt is extinguished by the payment.

But if the surety gives his negotiable note for the debt, and it is received expressly in satisfaction of the debt, this is regarded as equivalent to the payment of money, and an action may be immediately brought by the surety, although the note remains unpaid.

Elwood *v.* Deifendorf.

A party bound by either an express or an implied contract, in virtue whereof he may become liable to pay money to another, although his liability may be contingent, is a debtor.

After the execution of a note by two persons in the characters of principal and surety, the principal is a debtor to the surety; and although his liability to indemnify the surety is, previous to the payment of the debt by the latter, contingent, it is nevertheless a legal debt, and will be embraced in the terms of a will made by him, charging his real estate with the payment of his "just debts."

An action at law will not lie, in behalf of a creditor, against a devisee of land charged with the payment of debts, unless such devisee has made an express promise to pay the debt, or has paid a part of it, which will be considered as conclusive evidence of an express promise to pay.

Even where a devisee enters upon the land devised to him charged with the payment of debts, and promises to pay them, a court of law has no jurisdiction of an action against him for the recovery of the debts, unless the land is exclusively charged with their payment. If the personal estate is to be first applied in payment of the debts, or is to come in aid of the real, the cause belongs exclusively to a court of equity; and a court of common law has no jurisdiction.

And in cases where a court of equity has exclusive jurisdiction, the only limitation applicable to the demand is the ten years' limitation of suits in equity.

A devisee of land charged with the payment of debts, by accepting the devise, becomes personally liable to pay the debts charged upon the land.

The personal liability of the devisee, however, will not exonerate the real estate from the charge. Such charge will continue a lien on the premises not only in the hands of the devisee, but also in the hands of his grantees.

But the devisee, by accepting such a devise, is primarily liable for the payment of the debts, in exoneration of the premises in the hands of his grantees. And the remedy of creditors must first be exhausted against the devisee personally, before their lien can be enforced against portions of the lands subject to the charge, which have been aliened by the devisee.

Real estate devised subject to the payment of debts, must be charged in the inverse order of its alienation.

Sureties of a surety, and assignees of a surety, are entitled to all the rights of the latter, and to be substituted in his place, as to all his remedies against the principal debtor, or his estate.

One of the rights of a surety is to charge his principal with the costs of a suit for the collection of the debt, which he has been compelled to pay.

IN EQUITY. The plaintiffs filed their bill in this suit on the 6th of Sept. 1845, to obtain payment from the estate and devisees of Henry Deifendorf, the father of the defendants, for money paid by Henry Elwood as surety for Henry Deifendorf. The plaintiffs in their bill alleged, that, in the year 1830, Henry Deifendorf borrowed of Peter I. Miller $1000, and gave to Miller his promissory note for the amount, which was signed by

Elwood *v.* Deifendorf.

David Deifendorf, and also by Henry Elwood as surety; that the money was borrowed for the sole benefit of Henry Deifendorf; that Henry Deifendorf made his will, and therein made several devises and bequests in favor of his wife and children, and devised to the defendant Cornelius Deifendorf his homestead farm containing 160 acres, and a wood lot of 13 acres, in fee, subject to, and charged with, the payment of all his just debts and of the legacies mentioned in the will; and also bequeathed to his executors all the residue of his personal property not previously disposed of, in trust for the benefit of his son Cornelius, with power to sell the same and to apply the avails towards the payment of the testator's legal debts and the legacies given in his will. The plaintiffs, in their bill, further alleged that Henry Deifendorf died on the 8th of February, 1834; that letters testamentary on the will were granted to the defendants Abraham H. and David Deifendorf and to John H. Deifendorf, in May, 1834; that John H. Deifendorf afterwards died; that the testator left personal as well as real property; that Cornelius Deifendorf accepted the real estate devised to him, and sold the wood lot to one Henry Wiles for $600; and that he, on the 5th day of October, 1843, conveyed by quit-claim deed the homestead farm to Charles Deifendorf in fee; and that Charles Deifendorf, by a like deed, on the 28th of December, 1843, conveyed the same in fee to the defendant Abraham H. Deifendorf. The plaintiffs, in their bill, further alleged that the note given to Miller was not paid previous to the death of Henry Deifendorf, and that a large sum remained due thereon at that time; that on the 15th of March, 1848, $515,36 was due on such note; that on that day David Deifendorf requested Henry Elwood to sign, with him, a new note payable one day after date, to Miller, for such balance; that Henry Elwood complied with such request, upon condition that David Deifendorf would procure and deliver to him the $1000 note. The bill further alleged that Miller, on the 9th day of February, 1839, commenced a suit on the new note given by David Deifendorf and Henry Elwood, and on the 22d of May, 1839, obtained a judgment thereon for $621,78; that David Deifendorf, on the 1st

Elwood *v.* Deifendorf.

of March, 1839, became insolvent, and after the recovery of such judgment obtained a discharge under the bankrupt act; and that Henry Elwood, on the 26th of January, 1841, paid to Miller the whole amount of such judgment. The plaintiffs, in their bill, further alleged that Henry Elwood, for a valuable consideration, assigned his claim and demand for the payment of such judgment, against the estate of Henry Deifendorf, to the plaintiffs; and the plaintiffs prayed that an account might be taken of the real and personal estate of Henry Deifendorf, and that his executors might be decreed to pay to the plaintiffs the amount of the judgment, &c. paid by Henry Elwood; and in case there were no personal assets in their hands, that Cornelius and Abraham H. Deifendorf might be decreed to pay the same; and that in default thereof the homestead farm, devised to Cornelius, might be sold for the payment thereof. The defendants Abraham H. and David Deifendorf, in their answer, set up that the money on the $1000 note given to Miller was borrowed by the defendant David Deifendorf for his own benefit, and that Henry Deifendorf and Henry Elwood signed the note as his sureties; that the new note for $515,36, given to Miller for the balance due on the $1000 note, was signed without any such consideration as was stated in the plaintiffs' bill; that such new note was made payable one day after date; and the defendants, in their answer, alleged that after the $1000 note was taken up by David Deifendorf he cancelled the same: The defendants also set up in their answer, that the executors of Henry Deifendorf had a full and final accounting of their executorship, before the surrogate of Montgomery county, that Henry Elwood was duly notified of such accounting; and that the surrogate made a final decree upon such accounting. The defendants also set up in bar of the plaintiffs' recovery, that their cause of action did not originate within six years before the commencement of the suit. The bill was taken as confessed against Cornelius Deifendorf. Henry Elwood, Daniel H. Deifendorf, Daniel Moyer, David Elwood, Jacob Miller, Nathan Soule, George Crouse and David H. Little were examined as witnesses for the plaintiffs; and the defendant David Dei-

Elwood v. Deifendorf.

fendorf in behalf of his co-defendant Abraham H. Deifendorf. Henry Elwood and David Elwood were objected to by the defendants, as incompetent witnesses, on the ground of interest. To obviate the objection to Henry Elwood the plaintiffs executed and delivered to him two separate releases. After the execution of these releases the defendants persisted in their objection to the competency of Henry Elwood, but omitted to specify any ground for such objection. The plaintiffs objected to the competency of David Deifendorf, on the ground that he was a defendant in the suit. The judgment recovered on the new note given to Miller was, on the 26th of January, 1841, paid by a note to Miller for the damages, signed by Henry Elwood and by his·brothers Peter Elwood and George Elwood the plaintiffs, and by David Elwood, as his sureties, dated Jan. 26, 1841, and by a note for the costs, signed by Henry Elwood and endorsed by his said three brothers. The note for the damages was paid up by Peter, George and David Elwood, in equal shares, on the 21st of June, 1845. The note for costs was previously paid. On the 11th of August, 1845, Henry Elwood, by an instrument in writing, for value received assigned to Peter and George Elwood (the plaintiffs) all his claim and demands against the estate of Henry Deifendorf, or his devisees, by reason of his signing a note with Henry and David Deifendorf to Peter Miller, reciting that such note was renewed, &c. for about $515, and that the judgment recovered on the $515 note had been paid mostly by Peter and George Elwood. The first release of Peter and George Elwood released Henry Elwood from all claims for all moneys advanced by them for him in payment of such judgment; and the second release released him from all claim or liability for damages which had accrued, or might accrue, to them in consequence of his aforesaid assignment to them. There was no evidence that Miller gave up to David Deifendorf the $1000 note, when the new note for $515, signed by David Deifendorf and Henry Elwood was delivered to him. Henry Elwood testified that he agreed to assign to the plaintiffs his interest in the Miller claim because they had paid the Miller debt. It appeared by the decree of the

surrogate upon the accounting of the executors of Henry Deifendorf, that citations were issued only to the widow, heirs and next of kin of Henry Deifendorf, and that on the accounting Henry Elwood appeared as the husband of his wife, who was an heir and legatee of Henry Deifendorf.

*H. J. Campbell & N. Hill, Jun.* for the plaintiffs.

*T. B. Mitchell,* for the defendants.

PAIGE, J. The evidence, I think, establishes the allegation in the plaintiffs' bill, that Henry Deifendorf was the principal debtor in the note for $1000, given to Peter I. Miller in 1830, and that Henry Elwood and David Deifendorf signed the note as his sureties. Henry Elwood swears that he signed the note by the request of Henry Deifendorf, and as his surety; that the latter, when he applied to him for his signature, stated to him that he wanted the money, to be borrowed on the note, to enable him to redeem the farm of Abraham Deifendorf, (which had been sold on an execution;) and that frequently after the note was executed, Henry Deifendorf spoke of the note, and said to the witness that he should have no trouble about it. Nathan Soule proves an arrangement entered into between him and Henry Deifendorf, by which it was agreed that he (Soule) should bid in the real estate of Abraham Deifendorf, and that Henry Deifendorf should redeem the same, and should pay him a part of the redemption money soon after the sale. And Soule testifies that money and a note of Peter I. Miller, amounting to about $1000, were, in pursuance of this arrangement, paid to him by Henry Deifendorf, or some one of his sons, either at the time of, or soon after the sale, and that the balance of his bid, and interest, was paid on the 15th of June, 1831, when the premises were redeemed. Soule further testified that Henry Deifendorf told him that he would let his son Daniel take the title to the property, as he wanted to help him; and that he expected to make a loan of $1000 from Miller; and that witness' impression was that Henry Deifendorf sub-

sequently told him that Henry Elwood signed the note to Miller as his surety. The evidence of Daniel H. Deifendorf and George Crouse, corroborates the testimony of Henry Elwood and Nathan Soule. The arrangement testified to by Soule was carried out, and Soule bid off the real estate of Abraham Deifendorf for $1600, and Daniel H. Deifendorf redeemed the property, and took the sheriff's deed in his own name, and paid to his father Henry Deifendorf on account thereof, $1600, and conveyed to him 70 acres of the premises so redeemed; and retained as his own a lot of 60 acres, valued at $3000. This evidence satisfactorily establishes, that the money borrowed from Miller was borrowed by Henry Deifendorf, on his own account; and that in giving the note for the same he was the principal, and the other two signers his sureties. If David Deifendorf received any part of the borrowed money, or if any part of it was applied in payment of his debts, it must have been in consequence of some subsequent arrangement made by him with his father, after the note was executed. It is very possible that some agreement was subsequently entered into between David Deifendorf and his father, by which David assumed the payment of the note to Miller. For it appears by the testimony of David Deifendorf that all the payments which had been made on the original note of $1000, previous to the giving of the new note for $515, were made by him. But if such agreement was entered into between David and his father, it did not alter the relation of principal and surety between the latter and Henry Elwood, previously created by the execution of the original note. There is no evidence that Henry Elwood was made acquainted with such agreement, if any existed, or that he was notified that David Deifendorf sustained any other relation to him than that of a co-surety. Henry Elwood was objected to by the defendants as an incompetent witness for the plaintiffs, on the ground of interest. The defendants, on the objection being made, executed and delivered to him two separate releases, to obviate the objections made to his competency. After the delivery of these releases, the defendants persisted in their objection to the competency of the witness, but omitted to

specify any ground for such objection. On the argument it was insisted that the assignment, by Henry Elwood, of his claim against the estate of Henry Deifendorf, was not an absolute sale of such claim ; that whatever the plaintiffs realized out of the claim must be credited to Henry Elwood on the Miller debt, paid by the plaintiffs and by David Elwood; and that such credit would go to extinguish the claim of David Elwood against the witness, for the money advanced by him in part payment of the Miller debt. The assignment to the plaintiffs by Henry Elwood is in terms absolute, and I think it is an absolute transfer to them of his demand against the estate of Henry Deifendorf. The plaintiffs will therefore be under no obligation to account to Henry Elwood for such demand, if collected by them. The only question connected with Henry Elwood's interest in the event of this suit, arising out of the assignment, is whether such assignment is to be considered as a security taken by the plaintiffs to indemnify them against their liability as sureties for Henry Elwood, and if so, whether David Elwood, as their co-surety, is not entitled to share in the benefit of it. If he is entitled to the benefit of the assignment, then, as a part of the recovery in this suit must be applied to reimburse him for the money advanced by him in part payment of the Miller debt, which Henry Elwood, as his principal, is liable to refund to him, the latter is interested in the event of the suit. It cannot be disputed that, as a general rule, sureties are entitled to the benefit of all securities which may have been taken by any one of them, to indemnify himself against their joint liabilities for their principal. (1 *Story's Eq. Jur.* § 499. *Theob. on Pr. & Surety*, ch. 11, § 283. *Swain* v. *Wall*, 1 *Ch. Rep.* 149. *Fagan* v. *Jacocks*, 4 *Dev.* 263. *Bachelder* v. *Fisk, &c. ex'rs*, 17 *Mass. Rep.* 464. 5 *New Hamp. Rep.* 358.) The security taken by one of the sureties enures to the benefit of all. But it will not be necessary to decide, in this case, whether the assignment of the demand against the estate of Henry Deifendorf or his devisees, to the plaintiffs, enured to the benefit of David Elwood; inasmuch as I have come to the conclusion that the defendants' have waived the

objection to the competency of Henry Elwood as a witness, on the ground of his interest growing out of the right of David Elwood, to share in the benefit of the assignment to the plaintiffs, by not specifying that as the ground of their objection. If this ground of objection had been specified before the examiner, the plaintiffs would have had an opportunity of obviating it, by obtaining a release from David Elwood. A party who objects to evidence, or to the competency of witnesses, should state specifically the grounds of his objection. It is not sufficient to object generally that the evidence is illegal, or the witness is incompetent : but the party objecting must put his finger on the very point, to apprize the court and his adversary of the precise objection he intends to make. (*Camden* v. *Doremus*, 3 *How. U. S. Rep.* 515. 1 *Cowen*, 622. 12 *Wend.* 504. 1 *Id.* 418. 1 *Hill*, 91.) If the assignment to the plaintiffs enured to the benefit of David Elwood, he was undoubtedly an incompetent witness for the plaintiffs. If Henry Elwood had not assigned to the plaintiffs, they and David Elwood having, as his sureties, paid the original debt of Henry Deifendorf, would, in equity, have been subrogated to all his rights and remedies, as the surety of Henry Deifendorf, for the recovery against him, or his estate, of the debt so paid by them. (1 *John. Ch.* 409.) And I do not believe that the plaintiffs, by taking an assignment to themselves alone, of the claim of Henry Elwood as surety, against the estate of Henry Deifendorf, could exclude David Elwood from the benefit of a participation therein, to which he was in equity entitled, as soon as he paid a part of the original debt. But I do not regard the testimony of David Elwood as at all important ; and I shall not therefore rely upon it, in my disposition of the case. The execution of the notes given by Henry Elwood, and by the plaintiffs and David Elwood, to which the latter testified, was admitted by the defendants ; and the residue of the testimony of this witness, related principally to the declarations of John H. Deifendorf, the deceased executor of Henry Deifendorf, admitting the liability of the estate of the latter to Henry Elwood, for the Miller debt. These declarations were not admissible as evi-

dence against the defendants.  It is now well settled that the admissions of an executor or administrator cannot be received in evidence either as against his co-executors or co-administrators, or as against heirs and devisees.  (3 *Cowen*, 612.  6 *John. Ch.* 372.  5 *Wend.* 561.  4 *Cowen*, 494.  14 *Wend.* 97.  5 *Hill*, 239.  14 *Wend.* 90.)  All evidence, therefore, of the admissions of John H. Deifendorf of the liability of the estate of his father to Henry Elwood, was illegal, and must be stricken out of the case.   David Deifendorf having been discharged as a bankrupt, under the bankrupt act, could have no interest in the event of the suit.   He was therefore a competent witness for the defendants.

The decree of the surrogate on the final settlement of the account of the executors of Henry Deifendorf, is no bar to a recovery by the plaintiffs.   The creditors of Henry Deifendorf were not parties to that proceeding.   The citation was served only on the widow, legatees, heirs and next of kin.   Henry Elwood was cited merely as the husband of a legatee.   The claims of the creditors did not come in question, and the surrogate had no authority to pass upon them.   His authority to determine the validity of claims of creditors is limited to cases where it appears that a part of the estate remains to be paid or distributed.   (2 *R. S.* 95, § 71.)   There is no evidence in this case that either Henry Elwood presented his claim as a creditor, to the surrogate, or that the latter passed upon it.   It appears from the surrogate's decree that no part of the estate of Henry Deifendorf remained in the hands of the executors, to be paid or distributed ; and it appears that the personal estate was greatly insufficient for the payment of the debts.   The decree, under the circumstances, was only conclusive evidence of the facts specified in section 65, of the title of the revised statutes relative to executors and administrators.   (2 *R. S.* 94.)   The decree is only important as an item of evidence to show that the personal estate of Henry Deifendorf has been exhausted in the payment of his debts, and that no part of it remains to be applied in payment of the claim of the plaintiffs.   The plaintiffs, therefore, if they have established their claim as one

---

Elwood v. Deifendorf.

---

of the debts of Henry Deifendorf, must seek their remedy against Cornelius Deifendorf, the devisee, personally, and the real estate devised to him, which the testator expressly charged with the payment of his debts.

The giving of the note to Miller, on the 15th of March, 1838, for $515,36, (the balance due on the $1000 note,) by Henry Elwood and David Deifendorf, did not discharge the estate of Henry Deifendorf from liability. There is no evidence that this note was received by Miller expressly as payment of the original note; or that the latter was given up by Miller to David Deifendorf, on the receipt of the new note for the balance due thereon. The taking a note, either of a debtor or of a third person, for a precedent debt, is no payment, unless it be expressly agreed to take the note as payment and to run the risk of its being paid ; or unless the creditor parts with the note, or is guilty of laches in not presenting it for payment. ( *Tobey* v. *Barber*, 5 *John.* 72. *Muldon* v. *Whitlock*, 1 *Cowen*, 303, 304, 306, 307.) And it seems that a promissory note of the debtor, or of one of two or more joint debtors, given for a precedent debt, is not a satisfaction of such precedent debt, even although the creditor expressly accepts the note in satisfaction. This principle, distinctly advanced in *Cole* v. *Sackett*, (1 *Hill*, 516,) and in *Waydell* v. *Luer*, (5 *Id.* 448,) cannot be considered as overruled in the decision of the latter case by the court of errors. (3 *Denio*, 410.) A negotiable note may operate *sub modo*, to satisfy a debt; as for the purpose of enabling a surety to bring an action for money paid, against the principal. (5 *Hill*, 451, *per Cowen, J.*) If the new note for $515,36 should be deemed a payment of the old note, I cannot see how it could injuriously affect the remedy of Henry Elwood as a surety, or of his assignees, against the estate and devisees of Henry Deifendorf. That note was eventually paid by Henry Elwood. It was given by him and David Deifendorf as the sureties of Henry Deifendorf, and because they were liable to Miller in that character. That note having been wholly paid by Henry Elwood, as surety, he can, *qua* surety, call upon his principal for reimbursement. The counsel of the defendants

made a point, upon the argument, that the giving the new note to Miller extended the time of payment of the original note, and thereby discharged the estate of Henry Deifendorf from liability : assuming that Henry Deifendorf was only liable as surety.   There being no agreement to extend the time of payment, the giving the new note could not have that effect. The new note can only be regarded as a new or a collateral security for the payment of the old note.   And although it was made payable at a future time, (one day after date,) it implied no agreement to postpone the remedy on the old note. It is now the settled doctrine that the taking a new security from the principal debtor for an old debt past due, payable at a future day, without an agreement to extend the time of payment, does not discharge the surety.  (*Gahn* v. *Niemcewicz*, 11 *Wend.* 320.   *Twopenny* v. *Young*, 3 *Bar. & Cres.* 208. *Emes* v. *Widdowson*, 4 *Car. & Payne*, 151.   *Pring* v. *Clarkson*, 1 *Bar. & Cres.* 14.   *United States* v. *Hodge*, 6 *How. S. C. Rep.* 279.)   But if I am right in my conclusion, from the evidence, that Henry Deifendorf was the principal debtor, the doctrine, in relation to the discharge of a surety by the creditor's giving time, without his consent, to the principal debtor, has no application to this case.   And if by any subsequent arrangement between Henry and David Deifendorf, the latter assumed, for a valuable consideration, the payment of the debt, and thereby took upon himself the character of a principal debtor in relation to Henry Deifendorf, as Miller and Henry Elwood were both ignorant of this change in the relation of these parties to each other, an express agreement, made by them and David Deifendorf, to extend the time of payment, would not have discharged either Henry Deifendorf or his estate.   For, to discharge a surety by giving time, not only the fact of suretiship must exist, but it must be known to the creditor, at the time of doing the act complained of.  (11 *Wend.* 323. 3 *Paige*, 651.)   When Henry Elwood signed the new note for $515,36, neither Miller nor Henry Elwood had any reason to suppose that David Deifendorf stood in the relation of a principal debtor, or that Henry Deifendorf and his personal repre-

Elwood *v.* Deifendorf.

sentatives and heirs, and devisees, had become divested of that character.

A surety has no cause of action against the principal debtor until he has actually paid the debt. His remedy, on payment of the debt, is not on the original security, but is for money paid for his principal. The original debt, by the payment, is extinguished. (*Story's Eq. Jur.* § 499, *b.*) But if the surety gives his negotiable note for the debt, and it is received expressly in satisfaction of the debt, this is regarded as equivalent to the payment of money, and an action may be immediately brought by the surety, although the note remains unpaid. (*Rodman* v. *Hedden,* 10 *Wend.* 501. *Wetherby* v. *Mann,* 11 *John.* 518.) The evidence authorizes the conclusion that the negotiable notes given by Henry Elwood and his three brothers, on the 26th of January, 1841, for the amount of the judgment recovered by Miller against Henry Elwood and David Deifendorf, on the $515 note, were accepted by Miller in full satisfaction of the judgment. That was in law a payment by Henry Elwood of the balance due on the original note, and his cause of action then accrued against the personal representatives and devisees of Henry Deifendorf, and not before. A negotiable note given by a surety, for the debt, to be equivalent to a payment of money, must be received expressly in full satisfaction of the debt. The note for $515,36 was not so received, and it cannot therefore be regarded as a payment and extinguishment of the original note.

Henry Deifendorf sustained the character of debtor to Henry Elwood, after the execution of the $1000 note to Miller. Although his liability was, at the time of the publication of his will, contingent, it was nevertheless a legal debt, and as such was, together with his other debts, made by his will a change and lien on the lands devised by him to Cornelius Deifendorf. A party bound by either an express or an implied contract, in virtue whereof he may become liable to pay money to another, although his liability may be contingent, is a debtor. (18 *Wend.* 375, 386. 5 *Cowen,* 67. 8 *Id.* 429.) In *How* v. *Ward,* (4 *Green.* 195,) it was held that the relation of debtor and cred-

itor existed between co-sureties; although there was only an implied contract between the parties, and although the liability of the defendant depended on a double contingency. The demand in this case arose fundamentally before the making of the testator's will. It arose upon a contract implied from the execution of the $1000 note, by which the testator agreed to refund to Henry Elwood all the moneys which he as his surety, should be compelled to pay to Miller, in consequence of his having signed the note.

The demand of the plaintiffs is not barred by the statute of limitations. The ten years' limitation of suits in equity is the only time of limitation applicable to this demand. (2 *R. S.* 302, § 52.) The plaintiffs have no remedy at law. No action at law will lie against Cornelius Deifendorf. He has not made an express promise to pay, nor has he made payments, of a part of the plaintiffs' demand, which might be considered as conclusive evidence of an express promise to pay. (*Beecker* v. *Beecker,* 7 *John.* 99. *Van Orden* v. *Van Orden,* 10 *Id.* 30. *Kelsey* v. *Deyo,* 3 *Cowen,* 144.) Even where a devisee enters upon the land devised to him, charged with the payment of debts, and promises to pay them, a court of law has no jurisdiction of an action against him for the recovery of the debts, unless the land is exclusively charged with their payment. If the personal estate is to be first applied in payment of the debts, or is to come in aid of the real, as is the case in this suit, the cause belongs exclusively to a court of chancery, and a court of common law has no jurisdiction. (*Tole* v. *Hardy,* 6 *Cowen,* 340. *Kelsey* v. *Deyo,* 3 *Id.* 144.) As, previous to the adoption of the new constitution, the courts of common law and of equity had not concurrent jurisdiction of the plaintiffs' cause of action, and as the court of chancery had exclusive jurisdiction thereof, the only limitation applicable to the plaintiffs' demand is the ten years' limitation of suits in equity. (*Dias* v. *Bouchard,* 10 *Paige,* 446.) The plaintiffs' cause of action accrued on the 26th of January, 1841, and the plaintiffs' bill was filed on the 5th of September, 1845, less than five years after the accruing of the cause of action. If the cause of action had accrued at the

time of the giving the new note for $515,36, on the 15th of March, 1838, the claim would not have been barred; as less than ten years would have elapsed at the time of the commencement of the suit. The defendants have mistaken in their answer, the time of limitation applicable to the plaintiffs' demand. They have set up the six years' limitation as a bar. The answer is therefore defective in not setting up the limitation applicable to the case. (*Van Hook* v. *Whitlock*, 3 *Paige*, 417, 418.) Previous to the adoption of the revised statutes there was no statute of limitations applicable to a charge on real estate. (*Kane* v. *Bloodgood*, 7 *John. Ch.* 115.) Such charge was barred only by the lapse of 20 years, in analogy to the statute bar of an action of ejectment.

Cornelius Deifendorf, by his acceptance of the devise, became personably liable to pay the debts charged on the real estate devised to him. (*Dodge* v. *Manning*, 11 *Paige*, 347; *S. C.* 1 *Comst.* 298.) His personal liability, however, did not exonerate the real estate from the charge. Such charge continued a lien on the premises in the hands of not only the devisee but also of his grantees. But although the debts of the testator are a lien on the lands devised to his son Cornelius, Cornelius by his acceptance of the devise is primarily liable for their payment, in exoneration of the premises in the hands of his grantees. (11 *Paige*, 347, 1 *Comst.* 301, 303.) And the remedy of the plaintiff must first be exhausted against him personally before their lien can be enforced against the homestead purchased by the defendant Abraham H. Deifendorf. The real estate devised must be charged in the inverse order of its alienation. The plaintiffs cannot enforce their lien in this suit against the wood lot sold by Cornelius to Henry Wiles, as Wiles is not a party to the suit. I infer from the allegations in the bill and answer that the wood lot was sold previous to the sale of the homestead to Charles Deifendorf. If that be so, the remedy against the homestead must be exhausted before resort is had to the wood lot. The defendants made no objection, in their answer, that Wiles was not made a party, and did not set up that the wood lot ought to be applied in

Elwood v. Deifendorf.

payment before the homestead was resorted to, or that it was liable to be charged ratably with the homestead.

The plaintiffs being sureties of a surety, and also assignees of a surety, are entitled to all the rights of the latter, and to be substituted in his place as to all his remedies against the principal debtor or his estate. (1 *John. Ch.* 412. 3 *Paige*, 314. 6 *Id.* 32, 521. 2 *John. Ch.* 554. 4 *Id.* 123. 5 *Wend.* 89. 10 *John.* 525. *Story's Eq. Jur.* § 499.) One of the rights of a surety is to charge his principal with the costs of a suit for the collection of the debt which he has been compelled to pay. (3 *Barb. Sup. Court Rep.* 642.) This principle entitles the plaintiff to recover the costs of the suit against Henry Elwood and Daniel Deifendorf on the note for $515,36.

The personal estate of Henry Deifendorf having been exhausted in the payment of debts, a decree must be entered for the payment by the defendant Cornelius Deifendorf, of the amount of the note given in payment of the judgment recovered on the note of $515,36, with interest thereon from the 26th of January, 1841, together with the costs of this suit. And the decree must declare that the same (debt and costs) are a lien and charge on the lands described in the pleadings as the homestead farm. And the decree must direct that in case the plaintiffs are unable to collect the same from Cornelius Deifendorf, or his estate, they be permitted to sell the homestead farm for the payment of whatever amount of such debt and costs shall remain unpaid, after exhausting their said remedy against Cornelius Deifendorf,