Jones *v.* Smith.

## JONES *vs.* SMITH.

It inevitably follows from the act of congress commonly called the legal tender act, and from the decisions of the Court of Appeals of this state affirming the constitutionality of that act, that a bill of exchange payable "*in specie or its equivalent*," may be paid in legal tender notes, commonly called greenbacks.

THE plaintiff is the third indorser, and the owner of a certain bill of exchange, drawn upon and accepted by the defendant. The bill of exchange, on which this action is founded, is as follows:

$218.67. 　　　　　"NASSAU, N. P. November 19th, 1864.

W. HIGBIE SMITH, Esq., 171 Pearl street, New York. Sir: At one day's sight, pay to the order of Messrs. Sands & Son, the sum of two hundred and eighteen dollars sixty-seven cents, in specie or its equivalent, being in lieu of a draft, said not to have been received, dated June 4th, 1864, *balance of freight money* as per account rendered for schooner *Eliza.* Either of which being paid the other to stand void.

Yours respectfully, 　　JAMES BAKER SMITH."

Written across the face, "Nov. 29th, 1864. Accepted. Wm. Higbie Smith, 171 Pearl st."

(Indorsed) Sands & Son, Wm. Sands & Son, Walter Jones.

On the 3d day of December, 1864, on the maturity of the bill, it was presented for payment to the defendant, at 171 Pearl street, in the city of New York, and the defendant thereupon offered to pay, and tendered in payment the whole face of the bill, being $218.67, in United States treasury notes, commonly called legal tender notes or greenbacks, and the plaintiff refused to accept the same in payment of said bill. After the commencement of this action, and on the 4th day of January, 1865, the defendant tendered to the plaintiff the sum of $247, in the said United States treasury notes, in payment of the bill, with interest, costs and disbursements, and the plaintiff refused to receive the same. Afterwards, on the 11th of January, 1865, the defendant made an offer in writing to the plaintiff, pursuant to section 385 of the Code, to allow judgment to be entered against him in this action by the plaintiff, for the sum of $218.67, with interest from December 3, 1864, with costs, which offer was not accepted by the plaintiff. The cause came on for trial on the 9th day of May, 1865, before the Hon. WILLIAM H. LEONARD, one of the justices of this court, a jury being waived. On the trial the plaintiff offered to prove the premium on specie, on the 3d of December, 1864. The defendant's counsel objected to this proof as irrelevant and inadmissible. This objection was overruled and exception was taken. On the 18th of May, 1865, the justice before whom the case was tried, signed and filed his decision in writing, finding as matter of fact, that on the maturity of the bill specie was at a premium over United States treasury notes of one dollar thirty-three and three quarters per cent, and that, at that premium, the amount due on said acceptance, at its maturity, was the sum of $504.50, which was then the equivalent of the sum of $218.67 in specie. To this finding exception was duly taken. Judgment was accordingly rendered for the plaintiff on this basis, for the sum of $520.46, on the 18th of May, 1865.

From this judgment the defendant appealed to this court.

*Spring & Wetmore*, for the appellant. By an act of the congress of the United States, passed February 25, 1862, the secretary of the treasury was authorized to issue on the credit of the United States, one hundred and fifty millions of *dollars* of United States notes, not bearing interest, payable to bearer at the treasury of the United States, and it provides that these notes shall be "lawful money, and a *legal tender* in *payment of all debts*, public and private, except," &c. (12 *U. S. Stat. at Large, p.* 711.) The validity of the act of congress above referred to, is not now open to discussion in this state. The counsel for the appellant assumes its constitutionality and binding force ; and it only remains to inquire how far its legal operation determines the rights of the parties now before the court. (*Metropolitan Bank* v. *Van Dyck*, 27 *N. Y. Rep.* 400. *Meyer* v. *Rosevelt, Id.*)·

I. The exception taken by the defendant to the admission of evidence as to the *premium* on *specie* on the 3d of December, 1864, and the third exception taken by the defendant to the findings of fact, and also the defendant's first exception to the judge's conclusions of law, were, each and all of them, well taken and should be sustained by this court. These exceptions are all based upon the idea that by force of the legal tender act of congress, payment or tender of the face of the acceptance in United States treasury notes, was a sufficient and full discharge of the acceptance. 1. The contract of acceptance in this case created a *debt* on the part of the defendant. The ordinary and legal acceptation of the term *debt* imports a sum of money arising upon contract express or implied. (3 *Black. Com.* 154. *Com. Dig. title Debt. Bac. Abr. same title. Denny* v. *Manhattan Company*, 2 *Hill*, 220. *Wilson* v. *Morgan, N. Y. Superior Court*, 1 *Abb. Pr. Rep. N. S.* 174.) The bill of exchange accepted by the defendant expresses upon its face that it is given for a pre-existing *debt;* namely, a "balance of freight money due" by the schooner *Eliza.* The bill simply *represents that debt*, and has *no other consideration to support it.*

The only effect and object of the bill was to specify the time and mode of payment of this debt, or money already due; and the indebtedness itself remains until the bill is paid. If the freight money in question had been demanded of the defendant in the city of New York, on the 3d of December, 1864, it could unquestionably have been paid by these United States notes. Why, then, should not the acceptance, based upon and representing the *same* indebtedness, be discharged in like manner? (2 *Pars. on Cont.* 197. 7 *Ellis & B.* 903. *Burdick* v. *Green*, 15 *John.* 247. *Wilson* v. *Morgan*, 1 *Abb. Pr. N. S.* 174.) The nature of the obligation incurred in this case by the defendant, as an obligation for a *debt*, is not in any degree varied or affected by the promise to pay "in specie or its equivalent." If these words had been omitted, the legal effect of the contract would have been the same. By the laws regulating our currency, when this bill was accepted, any acceptance or other contract to pay money necessarily implied the idea of payment "in specie or its equivalent." It can hardly be contended that the nature of the contract, or the extent of the obligation incurred, is altered by expressing in direct terms precisely and only that which the law would at all events imply. 2. The obligation of the defendant being, as we have shown, *a debt*, these United States treasury notes are, by virtue of the laws of the United States, competent *legal tender* in discharge thereof, and *at their nominal value.* Any other construction, and especially the one which seems to have been adopted in the decision of this case, namely, that these notes are only to be taken at their *market* value relatively to specie, would defeat the plain object and purpose of the law. It was evidently the intention of congress to strengthen and establish the credit of government by giving its notes a *fixed* and *certain* value, equivalent in every sense to specie, for all purposes except the payment of duties and interest on the public debt. To subject these notes to the daily fluctuations of the Wall street market, and to depreciate them by the speculative

premium on specie caused by "operations" in the brokers' offices, would be to defeat the intention of congress and to damage the credit of the government. Their certain and fixed value, as equivalent to specie, for the payment of debts, can only be applied by regarding and sustaining them at their nominal value.

Money has two purposes and two corresponding values. It is used as a circulating medium in payment of debts, and for this purpose it has, and of necessity must have, a fixed, arbitrary, standard value, measured by an established unit. In this respect it is maintained by law at its established value, and does not fluctuate. As lawful currency, its value as fixed by law does not change with the mutations of trade and commerce. Money is, however, also trafficked in and bartered as a *commodity.* In this character its value fluctuates with the changes of the times, and acquires a *market value,* often very different from its standard or legal value. For the purpose of paying debts, the standard value of money is the only value known to the law. It is the value fixed by statute; and no court can look beyond the statute. For this purpose, its value is not a matter of *evidence,* but a *question of law;* and it is irrelevant and improper to admit evidence as to its market value, when its value, as a means of discharging debts is the only point at issue. The congress of the United States, by the act of 25th February, 1862, has in effect made these treasury notes for the payment of debts, of equal value with gold and silver coin. It has impressed upon them, by the highest authority known to the law, a fixed standard value, making the paper dollar the exact equivalent of a gold or silver dollar. Having created this paper money, and rendered it nominally, for all legal purposes as currency, equal to gold, there no longer remains, in legal contemplation, any difference between them. 3. If the above positions are sound, it follows that the tender by the defendant of the amount of his acceptance in United States notes, was the same in legal contemplation as a tender

Jones *v.* Smith.

of the same amount in specie. The offer of the defendant to allow judgment to be taken against him for the face of the bill, with interest and costs, was also a valid offer and should have been accepted by the plaintiff. The justice, at the trial, should have given its proper effect to this offer, and erred in the judgment rendered in this respect.

II. By a proper construction of the meaning and import of the bill of exchange in this case, and an application of familiar principles of law, it will appear that the parties intended, and must be deemed to have intended, that the defendant, at the maturity of the bill, should have the option of paying either in specie or in the United States notes. His offer of payment was therefore in exact accordance with the terms of his acceptance, and was rejected by the plaintiff at his peril. 1. The bill was drawn at Nassau, in November, 1864, two years after the passage of the legal tender act of congress. It was drawn upon the defendant at New York, and was to be paid in the city of New York. The meaning of the contract, and the obligations growing out of it, were to be determined by the laws of this state; and the parties are presumed to have made it with reference to the existing laws of this state. 2. At the time when the bill was drawn and accepted, and also when it matured, these treasury notes were by law the "equivalent" of specie, and the acceptor had the legal right to pay the acceptance either in specie or in these notes. It is to be assumed that when they made this contract they were cognizant of the laws of the United States in this behalf. They must be deemed to have intended to contract in obedience to our laws rather than in opposition to them. (*Wilson* v. *Morgan, supra.*)

III. If, however, the contract in this case was expressly to pay the face of the bill in specie, or in lieu thereof as many dollars in treasury notes as should represent the *market value* of the face of the bill *in specie* at its maturity, such a contract is contrary to the policy of the legal tender act, and cannot be applied or enforced either at law or in equity.

1. When a contract is contrary to law, or when its tendency and practical effect is to nullify its operation and defeat its object—or when it attempts to do or regulate in one way that which the legislature has determined, for reasons affecting the general welfare, shall be done in another—the law pronounces the contract void. (*Schoenberger* v. *Watts, Am. Law Reg. N. S. vol.* 1, *p.* 553. *Kneettle* v. *Newcomb,* 22 *N. Y. Rep.* 249. *Crawford* v. *Lockwood,* 9 *How. Pr. R.* 547.) 2. The legal tender act being one intended, in the wisdom of congress, to uphold the credit of the government, and to establish a financial policy for the benefit of the whole country, whereby the privilege was conferred of paying debts by these treasury notes, equally with specie, no executory agreement waiving that privilege can be upheld. (*Schoenberger* v. *Watts, supra. Carpenter* v. *Atherton,* 28 *How. Pr. R.* 318. *Kneettle* v. *Newcomb,* 22 *N. Y. Rep.* 249. *Meyer* v. *Roosevelt,* 27 *id.* 400. *Metropolitan Bank* v. *Van Dyck, Id.*)

IV. The judgment in this case cannot be sustained on any idea of a *specific performance* of the agreement, as prayed for in the complaint. 1. The prayer for specific performance is unwarranted by the case made by the complaint. There are no proper allegations in the complaint justifying an appeal to the equity powers of the court in any particular. The complaint sets forth an ordinary action of sssnmpsit on a bill of exchange, and the only prayer pertinent to the case, or which the law can regard, is for judgment for the amount of the debt, in dollars and cents, with interest and costs. There is nothing in the nature of a bill for specific performance in the case. 2. Equity will not, even in an application proper in form in this behalf, decree specific performance, unless something is, by the terms of the contract, to be done *besides the payment of money.* In every instance in which specific performance may be decreed, the whole or some part of the injury inflicted is, from the *nature* of the *contract,* not susceptible of a *money measurement.* In the present

case the whole injury may be measeured in money, the only question being as to the *amount* to be paid, and in this respect equity will not interfere with the legal assessment of damages. (*Sedgwick on Dam.* 10. *Turpin* v. *Burnton*, *Hardin*, 312.) 3. The objections which have been urged against the *validity* of these contracts, apply without reference to the tribunal in which relief may be sought. If those objections are valid, they preclude courts of law and equity alike from enforcing them or granting any relief. 4. The Revised Statutes provide that all judgments or decrees for any "debt, damages or costs" rendered by any court of justice shall be computed in "dollars and cents." They do not authorize any decree for any particular *kind* of dollars. (2 *R. S.* 833, *5th ed.*)

V. The questions of law involved in this controversy have been adjudicated in this and in other states in conformity with the views for which the defendant contends. The value of these United States treasury notes, as the lawful equivalent of specie for all the purposes of *currency* in the payment of debts, is emphatically asserted in *Meyer* v. *Roosevelt*, and *Metropolitan Bank* v. *Van Dyck*, (27 *N. Y. Rep.* 400.) Judge Balcom (*p.* 471) says: "It (the act of congress) makes the notes issued under it as valuable as gold coin in the hands of every person receiving them, for all commercial purposes and for the payment of debts, &c. I, of course, lay out of view the difference created by brokers and speculators between the value of gold coin and these notes, as having no legitimate bearing upon the question. That difference cannot be regarded, because it is *not recognized by law*, and all agreements to pay any such difference are *utterly void*." "Each five dollar note issued under this act is *precisely* of the *same value*, in legal contemplation, as a piece of gold coin of the denomination of five dollars," &c. &c. Judge Wright (*p.* 482) says: "A treasury note of the denomination of ten dollars is legally as valuable for the purposes of money as a coined eagle. The value of each is fixed at ten

dollars money of account." (See also *Hague* v. *Powers*, 39 *Barb.* 427 ; *Schoenberger* v. *Watts*, 1 *Am. Law Reg.* (*N. S.*) 553, *July*, 1862 ; *Schollenberger* v. *Brinton*, 3 *id.* 591, *August*, 1864 ; *Wassenbold* v. *Schlieting*, 16 *Iowa Rep.* ; *Wilson* v. *Morgan*, (*N. Y. Sup. Ct. Gen. Term*,) 1 *Abb. Pr. R.* (*N. S.*) 174 ; *Carpentier* v. *Atherton*, 28 *How. Pr. R.* 318. *Kneettle* v. *Newcomb*, 22 *N. Y. Rep.* 249 ; *Kempton* v. *Bronson*, (*Buffalo Gen. Term*,) newspaper slip, and *Rhodes* v. *Bronson*, (*Ct. of Appeals, January*, 1867.)

VI. Each and all the exceptions taken by the defendant to the findings of fact and to the conclusions of law of the justice who tried this case, were well taken, and should be sustained by this court.

VII. No argument adverse to the views above expressed can be drawn from any distinction between contracts of this nature made *before* the passage of the legal tender act, and those made *after* its passage. The argument against the validity of the latter seems to us stronger and more manifest than that against the former. If a contract made *before* the passage of the law, when it was confessedly legal, when no intention of contravening the policy of the government could be alleged, and when, in fact, there was no such policy to contravene—if such a contract is rendered nugatory by the subsequent legislation of congress, and is by law compelled to yield to such legislation, a *fortiori*, such a contract made *after* the passage of the law, in derogation of the declared policy of the government and with the tendency, if not with the intent of evading and defeating such policy, must be condemned and declared void.

VIII. The fact that congress has seen fit, in certain specified cases and for certain purposes, to recognize a difference between specie and paper, does not, when properly viewed, affect the soundness of the appellant's argument in this case. 1. The fact that congress has recognized such difference in such cases as in its wisdom seemed best, by fair implication excludes its application in any other than such specified

cases. 2. Congress has the power to make such special and exceptional recognition and to provide for such cases ; but no private individual has any such right. Any such attempt on the part of the citizen, and any recognition of such right by our courts, would manifestly tend to defeat the will of congress in this behalf.

*Comstock Brothers,* for the respondent. I. This appeal involves no question of constitutional law; only the construction of a commercial contract.

II. The subject matter is a mercantile transaction, and the contract should be construed according to the ordinary use of the language of merchants, for the court will give effect to the intention of the contracting parties, unless it contravenes some statute or public policy.

III. As between the drawer and payees, this bill was equitably intended to transfer a certain value either in specie or some other thing of equal value (specie being practically treated as a commodity,) and was drawn in its peculiar language in express view of the uncertain and fluctuating value of specie as a medium of trade, and as measured by our paper currency. As between the plaintiff and defendant it was an executory contract to carry out that design of the original parties.

IV. The *equivalent* intended was a mercantile one, and had full relation to the *value* of specie as a subject of traffic. No other equivalent would be desirable or is intended in such transactions. Equivalent is defined " a thing of the same weight or *value ;* that which is equal." (*Worcester's Dic.*) That which is of the same *value,* weight, power or force with something else. (*Webster's Dic.*) And *value* is "the quality of a thing which renders it useful, or the property or capability which a thing has of producing some good ; as the intrinsic value of water." (*Worcester.*) " Price : the rate of worth set upon a *commodity,* or the amount for which a

thing is sold; we say the value of a thing is what it will bring in the market." (*Webster.*) And commodity is defined, " every movable thing that is bought and sold." (*Id.*) The first finding is therefore a correct interpretation of the contract, and the first exception is not well taken.

V. The face of the draft in United States treasury notes, was not the *equivalent in value,* the *equivalent* intended by the parties, " the price of, nor what it (specie) would bring in market." The refusal to pay more was a refusal to perform the contract. Therefore the fourth finding is correct, and the second exception not well taken.

VI. The defendant had his election, by the contract, to deliver the specie dollars or an *equivalent* in *value ;* he elected to pay its *value* in treasury notes, but has never done so, or offered to. Whether he had paid, or offered to pay the *equivalent in value,* in performance of his contract, was a proper subject of inquiry and evidence on the trial; and it was proven by admission that he had neither paid it nor offered to do so. The judge's ruling on this subject, and his fifth finding, are correct, and the fifth and sixth exceptions not well taken. (*Gladstone* v. *Chamberlain, American Law Review, vol.* 1, *No.* 3, *p.* 387. *The Rectors, &c.* v. *Feushelied, Id.* 588.)

VII. The legal tender act does not provide that treasury notes shall be equivalent or equal to specie, or of the same value, but simply that they shall be a legal tender in payment of certain debts. It fixes a value on them for that purpose — no other; and that purpose was manifestly not intended by the parties in making this contract. The court will enforce this contract by holding the defendant to his election, and not frustrate its object and intent by an artificial construction.

VIII. The contract was not to pay a money debt, but to deliver specie as a commodity, or its equivalent (something that would buy so much specie.) If it had been to deliver any other article of merchandise, it is true it might have been discharged by a tender of treasury notes, but only by tender of

Jones *v.* Smith.

an amount *equivalent in value* to the goods. The plaintiff only contends for the same principle in this case.

These propositions seem so elementary and unquestionable, and the case differs so widely from the gold cases decided, and falls so directly within the spirit of the reasoning of Mr. Justice SUTHERLAND, contained in his opinion delivered in the recent case of *Murray* v. *Harrison,* that it is deemed unnecessary to cite other authorities.

XI. The findings and conclusion of the court below fully correspond with the intention of all the parties in executing this contract, and the election of the defendant as to mode of payment.

The judgment awards substantial justice, contravenes no statute, and public policy certainly requires the performance of private contracts according to the lawful intent of the parties, and the judgment should be affirmed, with costs.

SUTHERLAND, J. The bill of exchange upon which this action was brought was drawn at Nassau, New Providence, on the defendant at New York city, and was accepted by the defendant, and indorsed. to the plaintiff before acceptance and before maturity. By the bill the defendant was directed and required to pay at one day's sight, to the order of Messrs. Sands & Son, (a New York firm,) "the sum of two hundred and eighteen 67-100 dollars, *in specie or its equivalent,* being," &c.

In my opinion, it inevitably follows from the act of congress, commonly called the legal tender act, and from the decisions of the Court of Appeals of this state affirming the constitutionality of that act, that the defendant could discharge his acceptance by paying $218.67 in legal tender notes, commonly called green backs.

The act of congress provides, that these notes shall be "lawful money and a legal tender in payment of all debts, public and private, except duties and interest on the public debt."

As between the plaintiff, and the defendant, the acceptor, the bill represented or was evidence of a debt of $218.67, *payable in specie or its equivalent.* The acceptance was in legal effect a promise to pay $218.67 in specie or its equivalent, one day after sight. By the very terms of the contract or instrument, the acceptor had the option to pay the $218.67 in specie or its *equivalent ;* and by the act of congress, which has been declared constitutional by the Court of Appenls, legal tender notes, commonly called green backs, are made equivalent to specie or gold or silver coin, for the purpose of paying all debts due from one individual or citizen to another. The legal tender act, and the decisions upholding its constitutionality, have in effect made a legal tender note for the payment of ten dollars, ten dollars, for the purpose of paying a debt of ten dollars.

The judgment should be reversed.

LEONARD, J. *Rodes* v. *Bronson,* (34 *N. Y. Rep.* 649,) controls this case, and we must follow the decision of the Court of Appeals. The judgment must be reversed, &c.

INGRAHAM, J. also concurred.

Judgment reversed.

[NEW YORK GENERAL TERM, April 1, 1867. *Leonard, Sutherland* and *Ingraham,* Justices.]