WILLIAM C. CHURCH, AS ADMINISTRATOR, ETC. OF MARY M. CHURCH, APPELLANT, v. SETH HOWARD, RESPONDENT, IMPLEADED, WITH ALBERT G. FARGO.

*Note — when payable in gold coin — what alteration thereof discharges sureties — Code of Civil Procedure, § 399 — what not inadmissible under — Statement by an administrator — when admissible against the estate of his intestate.*

One Fargo gave a note signed by one Howard, as surety, by which two years from date he promised to pay "$2,000 with interest semi-annually at seven per cent in gold or its equivalent." After the maturity of the note it was altered by the direction and consent of the payee and of Fargo, but without the knowledge or consent of Howard, the surety, by striking out the words "in gold or its equivalent."

*Held,* that the note, as originally drawn, required a payment in standard gold or its equivalent; that the erasure of these words was a material alteration, and that the surety was thereby released. (LEARNED, P. J., dissenting.)

The payee having died, this action was brought by her administrator. Upon the trial Fargo, who offered no defence, was allowed, against plaintiff's objection and exception, to testify in behalf of Howard, as to personal transactions had by him with the deceased. *Held,* that as his testimony was not in his own behalf or interest, or in behalf of the party succeeding to his title or interest, it was not inadmissible under section 829 of the Code of Civil Procedure.

Upon the trial evidence as to statements made by the plaintiff, the administrator, to the effect that he erased the clause in the note at the direction of the payee, was admitted. *Held,* no error.

APPEAL from a judgment in favor of the defendant, entered upon the verdict of a jury.

The action was brought upon a promissory note made by the defendant Fargo, to the order of plaintiff's intestate, and signed by defendant Howard as surety. The latter defended on the ground, among others, that after the execution and delivery of the note, a material alteration was made without his knowledge or consent.

BOCKES, J.:

The defendant Howard was surety on the note in suit in its original form, which note then read as follows, to wit:

$2,000.

" Two years from date, I promise to pay Mary M. Church, or

bearer, $2,000 with interest, semi-annually at seven per cent in gold or its equivalent, value received.

"A. G. FARGO.

"SETH HOWARD, surety.

"EATON, *January* 18, 1870."

The jury found on the evidence submitted on the trial that the note, after its inception, was altered by erasing the words *in gold or its equivalent,* and that such alteration was made under the direction, or with the approval·of the payee, the then holder, and without the consent, sanction or ratification of the surety; for which reason the latter was discharged from liability thereon. It is urged as grounds of error on this appeal (1st): That the alteration was entirely immaterial, and in no respect changed the legal effect of the note; and (2d). That improper evidence was admitted against the plaintiff's objection, to his injury. It is undisputed that an alteration of a note by the payee, after its execution and delivery in a material part, without the consent or ratification of the maker, renders it inoperative and void; and so, of course, as to a surety under like circumstances. If changed in a material part, it no longer remains the same contract originally entered into, to the terms and conditions of which the party bound himself. In this case the alteration of the note by the erasure of the words "in gold or its equivalent" is not disputed, and the jury have found that such alteration was by the payee, or by her authority, and also that it was made without the sanction of the surety. Then did the erasure of those words change the legal effect of the contract? Did the erasure make it in any respect a different contract from what it was originally? Were these erased word, meaningless — mere surplusage? We are of the opinion that they had significance, and were material to the obligation assumed by the parties to the contract. The makers promised payment in gold or its equivalent. It may be that on a breach — that is, on the non-payment in gold or its equivalent — the damages recoverable would be measured by the standard or legal dollar; what the parties promised to do is one thing, and the measure of damages for a breach quite another matter. So it was held in *Bronson* v. *Rodes* (7 Wall., 229) that when the obligation was

to pay so many dollars "in gold or silver coin, lawful money of the United States," the contract called for coined dollars according to their market-value. In this case the chief justice considered the financial condition of the country at the time the obligation was entered into, and the purpose which the parties had in view in the use of the language employed by them, and gave construction to such language, according their evident intent; and, in *Butler* v. *Horwitz* (7 Wall., 258) it was held that whether the contract be for the delivery or payment of coin, *bullion*, or other property, *damages* for non-performance must be assessed in lawful money; and this, too, whether the contract was made before or since the passage of the legal-tender act. It is proper here to note that the decision in *Jones* v. *Smith* (48 Barb., 552) was made on the strength of *Rodes* v. *Bronson* (34 N. Y., 649), which was reversed in the United States Court (7 Wall., 229), above cited. Now, the contract in this case is to pay "in gold or its equivalent," thus *gold* was in contemplation between the parties as a commodity, and its "equivalent," considered as a commodity, was stipulated for as an alternative for the non-payment in that article. The parties so understood the contract and acted upon such understanding; and the erasure was made with the express purpose to effect the change in the obligation; nor was the understanding of the parties in conflict or inconsistent with the language employed to express their purpose; and it is also the settled law of this State that it is unimportant whether the alteration be beneficial or prejudicial. It is sufficient that the change is material. The party may insist that the contract shall remain and be enforced against him as originally made. If changed from this without his knowledge or approval, it is not his contract. Nor does it obviate the difficulty that the alteration was made after the note became due; hence did not change the liability of Mr. Howard. So soon as changed in a material point it was not his contract. He may insist that it shall remain in all its material parts as originally made. We are of the opinion, therefore, that the erasure of the words from the note in this case effected a change in the obligation as made by Mr. Howard, available to him as a defence to the action. It is not deemed necessary to comment upon, or here collate the numerous cases cited by the

learned counsel bearing more or less directly upon the question presented in this case, which cases are not entirely harmonious; but we content ourselves by expressing our conviction that according to the legal import of the obligation in this case, giving fair construction to the language employed, payment was promised in standard gold or its equivalent.

It remains now to enquire whether improper evidence was admitted or rejected during the trial, to the prejudice of the rights of the appellant. The defendant Fargo, the principal on the note, but who offered no defence, was allowed against objection to give evidence as to personal transactions between himself and the intestate, the payee of the note. The evidence was given in support of the defence interposed by Howard, the surety. Under section 399 of the former Code such evidence from Fargo would have been inadmissible. (*Genet* v. *Lawyer*, 61 Barb., 221; *Bennett* v. *Austin*, 12 N. Y. S. [5 Hun], 536; *Alexander* v. *Dutcher*, 14 id. [7 id.], 439; *Same Case in Ct. of App.*, 70 N. Y., 385.)

But a change has been effected by the Code of Civil Procedure in force at the time of the trial of this action (see section 829). That section precludes a party from testifying "in his own behalf or interest, or in behalf of the party succeeding to his title or interest" in the case specified. But Mr. Fargo was not called or examined as a witness in his own behalf or interest, nor in behalf of a party succeeding to his title or interest; but was called and examined for and in behalf of Mr. Howard, his surety, on the note in suit; he was not, therefore, prevented from giving evidence in this case in behalf of Mr. Howard by the provisions of section 829 as to personal transactions between himself and Mr. Church, deceased.

The defendant Howard gave evidence in his own behalf, and it is insisted that he was allowed to testify to transactions between himself and the deceased. One question before the jury was, whether he had authorized or sanctioned the alteration of the note, and he was allowed to testify, 1st. That he had no interest in the note, that he was merely surety for Fargo; and 2d. That he never paid or authorized the payment of any interest on the note. As to the statement that he had no interest in the note and signed it as surety only, the evidence seems quite

unobjectionable, except as it might have been well excluded as cumulative. It could not have worked any harm. It was, as appears, well proved by other unobjectionable evidence. The statement that he had never paid or authorized the payment of any interest on the note bore more or less upon the question of his having authorized the erasure, and it had a direct bearing upon the issue of the statute of limitations. True, the statement was of a negative character; but it was a denial of the existence of a fact material to the issue raised by him, to which the deceased, if living, might speak and contradict him. Had this evidence been objected to, its admission would have been error. (*Haughey* v. *Wright*, 19 N. Y. S. [12 Hun], 179; *Jacques* v. *Elmore*, 14 id., id. [7 id.], 675–676.) But this evidence was not objected to; therefore error cannot be predicated upon its admission. Howard further testified that Fargo informed him that his (Howard's) name had been stricken from the note and that he was no longer liable on it; that Mrs. Church said she would see that his name was taken off; that he relied upon this information and could thus have obtained security had he known of his liability. This evidence was objected to and should have been excluded. But as the case was given to the jury on the *sole* question relating to the erasure, this evidence was wholly irrelevant and unimportant. It had no bearing upon any question connected with the alteration of the note, hence was innoxious. Its admission, therefore, is insufficient as ground of substantial error.

Mr. and Mrs. Scranton testified that Mr. Church, the plaintiff and administrator, stated in their presence that he erased the gold clause in the note at Mrs. Church's request This evidence was admitted against the objection that the declarations of the administrator were "not evidence against the payee of the note." The objection literally construed is without significance. The payee was dead. She had no rights to be protected against the proposed evidence; hence the exception to the ruling raises no ground of error. But admitting that the exception goes to the admission of the administrator as evidence against the estate represented by him, which it does not in terms, and thus we are of the opinion that the objection was properly overruled. Mr. Church was the plaintiff in the action, as administrator, it is true; but it was his action, and for

anything that appears to the contrary, it was prosecuted for his sole benefit. The admission, too, was as to his own acts, with the deceased through whom he took title to the note. He was a privy in representation, and as such was identified in interest. So it has been held that in such case his admissions are admissible as to the matters in issue in the action. It has been so held repeatedly in Massachusetts. (*Atkins* v. *Sanger*, 1 Pick., 192; *Hill* v. *Buckminster*, 5 id., 391; *Faunce* v. *Gray*, 21 id., 243.) So in New Hampshire it was held that the declarations of a party to the record were admissible in evidence against him, whether he be a trustee merely or the party in interest. (*Tenney* v. *Evans*, 14 N. H., 343.) In this State, while an admission by an executor or administrator is not evidence against the heir or devisee, nor by one executor or administrator against his co-executor or co-administrator, yet an admission by a sole executor or administrator, or by all of several, is admissible. (*McIntire* v. *Morris*, 14 Wend., 90, 97; *The Cayuga Bank* v. *Bennett*, 5 Hill, 236; *Ellwood* v. *Deifendorf*, 5 Barb., 398 ; *Lane* v. *Doty*, 4 Barb., 535.)

It is believed that an administrator or executor cannot create a debt against the estate he represents ; and Judge SUTHERLAND remarks in *McIntire's Case*, that there seems to be a distinction between creating a debt and acknowledging one really existing, a distinction (the learned judge adds) "very difficult in many cases to understand and practically to apply." We conclude that there was no error in the admission of the evidence above referred to.

There still remains a question in the case as to the defence of the statute of limitations, which we are constrained to consider, but not without hesitation, as it was not raised or discussed by counsel on the argument before us. The defence was interposed and is in the record presented on the appeal. It is difficult to see why that defence was not fully established on the trial. The note in suit fell due January 18 — 21, 1872. The action was commenced February 22, 1878, more than six years thereafter. The payments of interest saved the right of action as to Mr. Fargo, who alone made those payments ; but with these payments the defendant Howard had no connexion. No payment on the note was made by him or for him by his authority or sanction. Payment by Mr. Fargo did not save the case from the effect of the statute as to Howard. No

promise to pay by Howard within six years before the commencement of the action was proved to have been made in writing, and none otherwise; indeed, as we must infer from the verdict of the jury, to whom was left the question of the alleged oral promise sworn to by Mr. Church but denied by Mr. Howard. The alleged oral promise seems to have been put in evidence as bearing on the question of a ratifiaction by Howard of the alteration of the note. But if deemed proved, it would, as it seems, have amounted to nothing in law; because if the alteration was made by the payee of the note or by her authority without Howard's knowledge, sanction or approval at or before the time it was made, the note became and was void as to him; and it would not be thereafter revived by a new oral promise to pay it.

The judgment must be affirmed, with costs.

BOARDMAN, J., concurred.

LEARNED, P. J., dissenting :

The alteration of an instrument does not vitiate, unless it changes the effect. To cross a t or to dot an i does not vitiate. (*Hunt* v. *Bennett*, 6 Mass., 519; *Brown* v. *Pinkham*, 18 Pick. 172.) Then the question must be, did this erasure change the effect. The note was dated in 1870, and was for the payment, at two years, of $2,000, with interest semi-annually, "*in gold or its equivalent.*" The italicized words were erased in 1873, after the note had become payable.

I. This was a promise to pay a sum of money, not to deliver a certain quantity of gold. (*Kimpton* v. *Bronson*, 45 Barb., 626; and *Rodes* v. *Bronson*, 34 N. Y., 649.) (The reversal of this last case in 7 Wallace, 229, on the ground that the legal tender act did not apply to existing contracts was itself reversed in the legal tender cases. [12 Wall., 459].)

II. Since the existence of two currencies, one of coin and the other of paper, it has been held that parties might specially contract for payment in coin, and might, on such a contract, recover coin. (*Chrysler* v. *Renois*, 43 N. Y., 209.)

III. But the parties in this case made no such contract. They contracted for payment not in gold, but in gold *or its equivalent.*

They must have meant something by that alternative. They did not mean that the defendant might pay by delivering as much of any commodity, which he might choose, as the gold would buy. For instance, the defendant could not have paid his interest by delivering as much pig iron as thirty-five dollars in gold would buy. That is not the meaning of "equivalent" in this place. But the word means the *legal* equivalent. And that is paper currency. Even silver coin was not a legal tender to this amount. (U. S. Revised Statutes, section 3586.) So that could not be a legal equivalent. But "greenbacks" were a legal tender to any amount, and were a legal equivalent for the gold. This principle was distinctly decided in the case of a bill of exchange having the same expression. (*Jones* v. *Smith*, 48 Barb., 552.)

What else can "equivalent" mean? It does not mean as many "greenbacks" as could be bought in market for the gold. For in *Chrysler* v. *Renois*, (*ut supra*), it was held that a debt, payable in gold, was not to be collected in "greenbacks" equal to the market value of the gold. But "equivalent" refers to the other currency, conferred upon the country by Congress — the paper equivalent, declared to be just as good as gold for paying debts.

If the parties had intended to make the interest payable *exclusively* in gold, they should have said so. Such a construction ought not to be given to a contract which expressly provides for payment in something else. The words, "in gold or its equivalent," therefore authorized a payment either in gold or in "greenbacks," and the erasure did not change the legal effect.

IV. Again : the points submitted by both parties show that they construe these words to be applicable to the interest only, and not to the principal. And we may, therefore, safely assume that such is the true construction. If this be so, then, after the maturity of the note, this clause did not apply. After the maturity of the note, it drew only such interest as was given by statute. (*Brewster* v. *Wakefield*, 22 How. [U. S.], 118; *Burnhisel* v. *Firman*, 22 Wall., 170.) On this ground, therefore, the erasure made no change whatever in the future effect of the note. For the clause had ceased to be operative.

The judgment should be reversed and a new trial granted, costs to abide the event.

Judgment affirmed, with costs.