### RODMAN vs. HEDDEN.

Where a *surety*, an accommodation endorser, pays part of a judgment obtained against him and gives his note for the balance, which is accepted by the plaintiff in satisfaction of the judgment and in full of his claim, *the cause of action* of such *surety* against his *principal* to recover as for money paid is perfect, and the *statute of limitations* begins to run; so that, under the circumstances of a given case, a plea of *actio non accrevit* will bar a recovery by the surety against the principal, although, counting from the time of the *actual payment* of the note thus given for the balance, the statute would be no bar.

ERROR from the New-York common pleas. Josiah Hedden sued John Rodman. The declaration contains several counts. The *first count* states that on the 30th August, 1819, Hedden endorsed a note for Rodman's accommodation, for the sum of $118, payable in 60 days; that Rodman engaged to provide funds for the payment of the note when due, and to indemnify and save harmless Hedden for any loss, &c.; that Rodman negotiated the note, but neglected to provide funds for its payment, by means whereof, on the 1st January, 1823, Hedden was obliged to pay and did pay to one *D. Jacot*, the holder of the note, the amount thereof, the interest, and a bill of costs accrued in a suit against him on the note, amounting to a large sum, to wit, &c. by means whereof the plaintiff is damnified. The *second count* is like the first, stating a note endorsed by Hedden for Rodman's accommodation, dated 21st February, 1820, for $123,12, payable in 60 days, paid by Hedden to one *J. H. Harrison*, the holder thereof, with interest and costs, on the 1st January, 1823. Then follow the money counts, charging indebtedness on the 1st January, 1825. The defendant pleaded, 1. *Non-assumpsit*, 2. *Actio non accrevit* as to first and second counts, 3. *Non-assumpsit infra*, &c. as to money counts. To the second and third pleas the plaintiff *replied*, that when the causes of action set forth in his declaration accrued, Rodman was *abroad*, to wit, at St. Augustine in Florida; that his first return to this state, after the accruing of the causes of action, was on the 23d August, 1830; and that the suit was commenced within

six years after such return. The defendant *rejoined*, denying the fact of his being abroad at the time of the accruing of the causes of action, averring that he was a resident within the state, and concluding to the country. On these pleadings the parties went to trial, when the following facts appeared : In July, 1820, a judgment was obtained against Hedden, on the note set forth in the first count, in favor of *Jacot* ; in October, 1820, Hedden paid $20 on account of the judgment, and on the 26th May, 1821, paid $100 more, and gave his note for $28,10, payable to Jacot in 60 days, which was accepted *in full satisfaction of the judgment and of the claim of Jacot* : this note was negotiated by Jacot, and paid by Hedden to the holders on the 28th day of *July*, 1821. A portion of the note set forth in the *second* count of the declaration was paid by Hedden, viz. $72,23, previous to 3d *April*, 1821. Rodman left New-York for St. Augustine the 25th *July*, 1821, and did not return until the summer of 1830, when this suit was commenced. The counsel for the defendant insisted that the plaintiff's causes of action accrued when the notes set forth in the declaration came to maturity, and were not paid by the defendant, and that, as the defendant did not leave this state until after such cause of action accrued, he requested the judge to charge the jury that, under the pleas of the statute of limitations, the defendant was entitled to a verdict. The judge refused so to charge, and the jury, under his direction, found a verdict for the sum of $335,52 in favor of the plaintiff, on which judgment was entered. The defendant sued out a writ of error. The cause was submitted to this court on *written arguments.*

*W. P. Hawes,* for plaintiff in error.

*W. S. Sears & J. Radcliff,* for defendant in error.

*By the Court,* SUTHERLAND, J. The principal question in this case is, when did the plaintiff's cause of action against the defendant accrue ?

The payments by the plaintiff, on account of the note negotiated to *Harrison*, were made on or before the third day of

April, 1821. So far as this portion of the plaintiff's cause of action is concerned, therefore, it accrued before Rodman left the state.

As to the cause of action set forth in the first count of the declaration : On the 26th May, 1821, Hedden, having previously paid $20, made a further payment of $100 on a *ca. sa.* which had been issued against him on a judgment obtained upon the note specified in that count, and gave his note for $28,10, payable 60 days after date to the plaintiff in the execution. This note was given to the plaintiff's attorney *in full satisfaction of the judgment,* and he paid a portion of the money received of Hedden to the plaintiff in the judgment, and gave to him the note for $28,10, *in full of his claim.*

If the giving of this note, under the circumstances of the case, can be considered so much money paid by Hedden for Rodman, then the whole cause of action was complete in Hedden on the 26th of May, 1821, when the note was given, which was two months before Rodman left the state. The statute having in that event commenced running before Rodman's departure, as to the whole cause of action, and more than six years having elapsed before the commencement of this suit, the whole cause of action is barred by the statute. It is true, as a general rule, that a surety, as such, cannot call on his principal at law until he has actually paid the money. Although a judgment be recovered against him, and he be imprisoned upon a *ca. sa.,* still that is no satisfaction to the creditor for his debt, or discharge of the principal debtor, and does not therefore entitle the surety to call upon the principal for money paid to his use. But where there is an express promise on the part of the principal to indemnify and save the surety harmless, and the surety is sued and charged in execution, the promise to indemnify is broken, and an action may be maintained without the debt having been paid by the surety ; but he will recover, not the amount of the debt, but only a compensation for the injury which he shows himself to have sustained. These principles were adjudged in *Powell* v. *Smith,* 8 *Johns. R.* 249, and are sustained by the authorities there referred to : 5 *Coke,* 86 ; 1 *Taunt.* 486 ; *Cowp.* 525 ; 1 *T. R.* 599 ; 2 *id.* 100 ; 2 *Esp. N. P.* 528 ; 3 *East,* 169. But

although a judgment recovered against a surety, or a bond given by him for the debt of his principal, will not enable him to sustain an action for so much money paid to his use, yet it has been held that if he give his negotiable note for the debt, which is received in satisfaction, it will be equivalent to the payment of money, and an action may be immediately brought, although the note remains unpaid. This was held by Lord Kenyon, in *Barclay & Proctor* v. *Gooch,* 2 *Esp. R.* 571. That case was referred to, and may be considered as having been sanctioned by this court in *Cumming* v. *Harcley,* 8 *Johns. R.* 206. It was there decided that the giving a bond was no payment ; but the court say, there are some cases in which the giving negotiable paper has been held equivalent to the payment of money, and refer to the case in *Espinasse ;* and it is remarked that there may be some reason for the distinction, for otherwise a party might be obliged to pay a debt twice, if the paper should pass into the hands of an innocent endorsee. Negotiable paper is considered as bearing a strong analogy to cash. But this point was expressly adjudged by this court in *Wetherby* v. *Manns,* 11 *Johns. R.* 518—a case very analogous in its circumstances to the case at bar. The plaintiff in that case had united with the defendants as their surety, in a promissory note to a third person ; they were all sued, and judgment recovered against them on the note. The plaintiff paid a part of the judgment in money, and gave his negotiable note for the balance, which was received by the judgment creditor in satisfaction of the judgment, though the judgment itself was not discharged ; and before the note was paid, he brought his action against the principal, and was held entitled to recover as for so much money paid to his use. This principle has also been recognized in various other cases. 3 *Mass. R.* 403. 11 *Johns. R.* 464. 6 *Cowen,* 301, 470. 7 *id.* 668. 1 *Wendell,* 430. The attorney of Jacot, who received the note, says that it was given in full satisfaction of the judgment, and that he gave the note with a portion of the money to *Jacot,* in full of his claim. I understand from this testimony, that the note was not only given by Hedden, but was also actually received in full satisfaction and discharge of the judgment. It was, therefore, upon the authority of the

preceding cases, equivalent to money paid for the use of Rodman, from the moment of its delivery ; and this having been two months before Rodman left the state, the whole of the plaintiff's cause of action was then complete ; and the judge should have charged the jury that, upon the issue of the statute of limitations, the defendant was entitled to their verdict.

Both the special counts allege that the defendant promised to provide money for the payment of the notes, endorsed (for his accommodation) by the plaintiff, when the same should become due and payable, and to indemnify and save harmless the plaintiff from any loss or damage, for or by reason of his endorsing the notes ; and upon the issue of non-assumpsit, the jury found that the defendant did so undertake and promise, although the bill of exceptions contains no evidence of any such special undertaking. If such was the contract, it was undoubtedly broken by the omission of the defendant to take up the notes at maturity, and suffering the plaintiff to be sued upon them ; and the plaintiff might immediately have sustained an action for the breach of the contract, although he would have recovered only nominal damages. Upon this point there can be no doubt ; the authorities are clear and explicit. 3 *Wils.* 13. 8 *Johns. R.* 249. 3 *Barn. & Ald.* 288, 626. 5 *Barn. & Cres.* 259. *Howell* v. *Young,* 11 *Com. L. R.* 219, *S. C.* But although it is true, as a general rule, as is shown by some of the above cases, that the breach of the contract, or the omission to do what the party had undertaken to perform, is the foundation and gist of the action, and not the damages which may subsequently result from such omission, still that doctrine is not, I apprehend, applicable in its full force and strictness to a case like this, of principal and surety. Wherever a surety pays money for his principal, by virtue of a legal obligation to pay, it is money paid to his use, and gives the surety an immediate and present cause of action against his principal. The case of *Butler* v. *Wright,* 20 *Johns. R.* 367, and 2 *Wendell,* 369, affords a strong illustration of this principle. Wright, in that case, was the first, and Butler the second endorser of a promissory note discounted at the Middle District Bank, for the accommodation and sole benefit of the maker, one Joseph A. Bostwick. The note not having been paid at maturity,

Butler was sued by the bank, and a judgment for $917,69 recovered against him. He made various payments on the note, amounting, in January, 1821, to $330, when he brought his action against his immediate prior endorser, Wright, for the money so paid by him; and although he was nonsuited upon the trial, this court, in 20 *Johns. R.* held he was entitled to recover, and set aside the nonsuit. Subsequently to 1821, the plaintiff made further payments to the bank, amounting, in March, 1825, to the sum of $378,42, and in October, 1826, brought another suit for that amount, and again recovered. 2 *Wendell*, 376. Although the plaintiff in this case, therefore, might have had a cause of action against the defendant for his omissiom to take up the note at maturity, and for suffering him to be sued upon it, still the subsequent payment by him of the notes, or of money on account of the notes, would, I think, create a new and distinct cause of action, and not be considered merely as the damages consequent on the original breach of the defendant's contract. But on the ground that the plaintiff's cause of action was complete on the 26th of May, 1821, when the defendant was still in this state, and that the statute then commenced running, I think his claim was barred by the statute, and that the court below erred in not charging the jury that upon that issue the defendant was entitled to their verdict.

Judgment reversed.