## Case No. 18,115.

### WYMAN et al. v. RUSSELL et al.

[4 Biss. 307.] [1]

Circuit Court, D. Indiana.  Feb., 1869.

FORECLOSURE—LIMITATION—SALE UNDER ATTACHMENT—RECORDING MORTGAGE — EFFECT OF EXTENSION ON NOTE — PARTIES — BURDEN OF PROOF.

1. As a general rule, mortgages cannot be foreclosed after the lapse of twenty years from the date when the cause of action accrued.

2. Under the statutes of Indiana of 1838, in a proceeding in foreign attachment where there was only constructive notice to the defendant, and where he did not appear to the action, no personal judgment could be rendered against him. In such a case, the judgment should have been simply for a sale of the property attached. And the only writ that could issue on such a judgment was a venditioni exponas. A sale on a fieri facias issued on such a judgment is void.

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

3. Under the Indiana Code of 1838, a neglect to record a mortgage within the prescribed time did not invalidate it, except as to a subsequent bona fide purchaser or mortgagee whose deed or mortgage was first recorded.

4. A mortgage was made in 1838, to secure notes which on their face all fell due in nine months thereafter. A suit to foreclose this mortgage was commenced in 1860. On each note the mortgagees indorsed an agreement to delay the collection of the notes for three years from the date of the mortgage. But these indorsements were not referred to in the mortgage, nor recorded. Quære, did this engagement thus indorsed on the notes, as between the mortgagee and innocent purchaser, take the case out of the operation of the Indiana statute of limitation of twenty years?

5. In a proceeding to foreclose a mortgage, all persons holding the equity of redemption of the lands or any part thereof must be made parties.

6. In a suit by assignees of a note and mortgage, if the assignment is denied it must be proved.

In equity.

Porter, Harrison & Fishback, for complainants.

M. M. Milford and McDonald & Roach, for defendants.

McDONALD, District Judge. On the 11th of September, 1860, the complainants, [Leander] Wyman and [Ephraim] Mariner, filed their bill in this case against the defendants, Samuel J. Russell and Lucy his wife, Erastus Bond and Mary his wife, Charles W. Thomas and Elizabeth his wife, Benjamin Lobock and Mary Ann his wife, Samuel Finny and Elizabeth his wife. Joseph Pool and Rachel his wife, Samuel Haller and Sarah his wife, David Neal and Lucinda his wife, Isaac Coleman and Rachel his wife, Jonathan Shideler and Sarah C. his wife, and Othniel Williams. The bill charges that in 1838, the defendants, Russell and Gilbert, partners, executed to Rayner and Pond of New York three notes, payable respectively in five, seven, and nine months, in the aggregate sum of two thousand seven hundred and fifty-three dollars and sixty-five cents, which have never been paid; that to secure the payment of these notes at the end of three years. Russell and wife, on the 13th of April, 1838, executed a mortgage to Rayner and Pond on divers designated tracts of land in Fountain county, Indiana, and on certain lots in the city of Milwaukee, which was recorded in Fountain county, Indiana, in 1841; that afterwards Rayner and Pond assigned the notes and mortgage to one Eldred. who, on the 11th of July, 1860, assigned them to the complainants; that no proceedings have ever before been instituted to collect them; that the defendants, Bond and wife, Thomas and wife, Finny and wife, Lobock and wife, Pool and wife, Haller and wife, Neal and wife, Coleman and wife, and Shideler and wife. "have. or claim to have, some interest in said mortgaged premises. as purchasers, incumbrancers. or otherwise; but such interest, if any, is subsequent to the mortgage."

The bill prays a foreclosure of the mortgage.

Bond and wife, and Thomas and wife, Finny and wife, Lobock and wife, and Shideler and wife have filed a joint answer to the bill. It substantially denies the material allegations of the bill. These defendants, in this answer claim title to separate portions of the land in Fountain county. And they aver that, on the 28th of April, 1838, in the Fountain circuit court, Isaac Coleman and Samuel Coleman commenced a proceeding in foreign attachment against said Samuel Russell, and one John F. Russell, William E. Russell, Henry Russell, Othniel Gilbert, James B. Stewart, John Pierson, James Smith, Joseph Wright, and David K. Knight; that the writ of foreign attachment in that case was on the same day levied on said lands in said county; that in September, 1839, said court rendered judgment in favor of the plaintiffs in that proceeding for one hundred and twenty dollars and twelve cents, and costs; that thereupon an execution on that judgment was issued to the proper sheriff, commanding him to sell the attached lands; and on the 14th of December, 1839, the sheriff sold the same on that execution to said Isaac Coleman and Samuel Coleman for one hundred dollars; that on the 3d of September, 1844, the sheriff made to the purchasers the proper deed on said sale, who on the 12th of May, 1845, conveyed the same lands to one William Baldwin, Elias Butler, and Lewis C. Wilson for one thousand six hundred and forty-eight dollars, "under whom these defendants hold and claim title, to said lands as innocent purchasers for valuable consideration"; that the notes in question, as they appear in the record of the mortgage, were due more than twenty years before the commencement of this suit, and therefore these defendants plead the statute of limitations; and that all the persons under whom these respondents hold said lands were, equally with the defendants, innocent purchasers, and together with them have, ever since the 14th of December, 1839, been in the quiet possession of these lands, and have made valuable improvements on them, without the assertion of any claim to them under the mortgage, and therefore the defendants insist that the complainants' claim is stale and inequitable, and should not be allowed. To this answer there is a general replication. The defendant, Russell, has filed an answer admitting the facts stated in the bill.

The cause is now submitted for final decree on the bill, answers, exhibits, and evidence. The mortgage and notes are in evidence; and in all respects the bill describes them correctly. The mortgage appears to have been acknowledged December 9, 1838, and recorded in Fountain county, April 5, 1841. On the back of each of the notes, there is the following indorsement: "For value received, we hereby agree to defer the payment of the within note three years from this date, interest being paid annually. Dated April 13, 1838. Rayner & Bond." But these indorsements, though of the same date as the mortgage, are not referred to in it, nor recorded. The defendants produce evidence an authenticated transcript of the attachment proceedings referred to in their answer. And it proves substantially the averments in the answer relating to those proceedings. By this transcript it appears that the Fountain circuit court ordered a sale of the attached lands. But neither the writ under which the sale was effected, nor the sheriff's return thereto, appears in the transcript. The clerk who made the transcript, however, certifies thus: "Which said execution and return appear to have been lost—which said execution by the records of the court was issued for said sum of one hundred dollars and twelve cents, and fifteen dollars and ninety-eight cents, costs accrued." The sheriff's deed to the purchasers under his said sale is also in evidence. It is dated September 3, 1844. After reciting the judgment in attachment, as above stated, this deed says that a writ on said judgment was issued to the sheriff commanding him that, "of the goods and chattels, lands and tenements of the" defendants in the attachment suit, "found in his bailiwick he should cause to be made the judgment," &c. Thus the deed describes a fieri facias, and not a venditioni exponas. Indeed, this conveyance and the transcript taken together plainly indicate that the writ was a common fieri facias. Moreover, this deed makes no reference to the writ of foreign attachment; and by its terms it would seem that the lands were sold in solido, and not in parcels.

The respondents, by divers deeds of conveyance, unnecessary to be here particularly noted, prove a chain of title from the purchasers at the sheriff's sale down to them. And I see no defect in this chain of title if the first link in it—the sheriff's deed—is valid. Still, allowing for the present that it is, the question would remain, which lien should prevail, that of the attachment proceeding or that of the mortgage? The mortgage was executed on the 13th of April, 1838; and the suit in foreign attachment was commenced April 28, 1838. The mortgage lien was therefore the older.

But was this older lien defeated by the failure to record the mortgage till April 5, 1841? At that time, the Indiana statute provided that mortgages should be "recorded within ninety days after the execution thereof;" and, if not so recorded, that they should "be adjudged fraudulent and void against any subsequent purchaser or mortgagee for valuable consideration" unless such mortgage should "be recorded before the proving and recording of the deed under which such subsequent purchaser or mortgagee may claim." Code 1838, 312. Now, the mortgage in question was recorded before the sheriff's deed was executed.

It is plain, therefore, that the omission to record the mortgage till 1841 would not, under this statute, defeat its priority over a sheriff's deed which was executed in 1844. Therefore the neglect to record the mortgage in time is of no avail to the defendants.

But, even if the sheriff's deed had beeen recorded before the mortgage was, it could not defeat the mortgage, unless it was a valid deed. To make it such, it must be supported by a valid judgment and a valid execution. Armstrong v. Jackson, 1 Blackf. 210.

In this case, there was a valid judgment. The transcript, indeed, shows that there was a personal judgment for one hundred and twenty dollars and twelve cents; and this was undoubtedly void; because it was rendered in a proceeding in foreign attachment, by default on a mere newspaper notice, against defendants who were not residents of the state, and who never appeared to the action. But another portion of that judgment is valid, namely, so much of it as ordered a sale of the lands which were attached. On this order a proper writ might undoubtedly have been issued. But what was the proper writ? certainly not a fieri facias. Beyond question, the only proper writ was a venditioni exponas. Was the writ on which the sheriff made the sale in question a venditioni exponas? Unfortunately the writ is lost. But the sheriff's deed describes no such a writ. As we have already seen, both it and the transcript describe a fieri facias. And an agreement between the parties on file admits that "said writ and sheriff's return thereof are substantially in accordance with the facts recited in the deed." According to this the sale was made under a fieri facias; and it was therefore void; and the deed was and is consequently void.

But, though the respondents are not entitled to claim anything under the sheriff's deed, still is not the staleness of the complainants' demand such that a court of equity ought not to decree in their favor?

The mortgage was executed April 13, 1838. On its face, it purports to have been made to secure three notes then existing, and falling due respectively in five, seven, and nine months. On the face of the mortgage, therefore, it would seem that all these notes were due on the 13th of January, 1839. The bill was filed September 11, 1860, more than twenty-one years after the debt was due. To meet this difficulty, the complainants insist that, by the indorsements on the notes already referred to, they really did not fall due till the end of three years after the execution of the mortgage; and therefore the statute of limitations did not begin to run against their claim till January 13, 1842. Possibly this fact saves the case from the operation of the statute of limitations; though I doubt it. Perhaps it might as between the holders of the mortgage and the makers of it; but it is more questionable as between the holders and the respondents, who were ignorant of the agreement to extend the time of the payment of the notes, and who appear by the evidence to have purchased the land in good faith, and to have been long in quiet possession of it and made valuable improvements on it. However, in 1862, under my predecessor in office, so much of the answer as sets up as a defense the lapse of time was excepted to by the complainants as being an improper way of setting up the bar of the statute of limitations. The judge then sustained the exception and ordered the part of the answer thus excepted to to be stricken out. It has not indeed been expunged; but I think I must not regard it as a part of the answer. But this is not very important in view of other points hereafter to be considered.

It is in evidence that the lands in question, since the mortgage was made and before the commencement of this suit, have passed through many hands, been subdivided into small lots, and sold to divers purchasers, who for many years past have occupied them as their own and improved them; and that several of these purchasers, though within the jurisdiction of this court, have not been made parties to this suit. Certainly they are necessary parties. And till they are made parties the complainants cannot have a decree of foreclosure. In such a case, the court might indeed order the case to stand over till all the necessary parties are brought in. But, as no motion to that effect has been made, and as there is a fatal objection to a decree for the complainants resting on the insufficiency of the evidence, I will not of my own motion make such an order.

The complainants sue as assignees of the notes and mortgage in question. The answer denies the assignments of them. Under these circumstances the burden devolved on the complainants to prove the assignments as alleged in the bill. On this point there is no evidence whatever. And this circumstance is fatal to a recovery by the complainants. The bill is dismissed without prejudice at the complainants' costs.

NOTE. Where creditors have allowed the statute to run against their debts, it runs also against the security for the debt; and where the creditors for whose benefit an assignment was made delay asserting any claim to the trust funds until the debts intended to be secured are barred by the statute, it becomes the duty of the trustee, after such lapse of time, to refuse to pay the debts, and a court of equity will refuse to enforce the trust. Gibson v. Rees, 50 Ill. 384. For the general statement of the doctrines of limitations as to mortgages, consult 2 Washb. Real Prop. (3d Ed.) 174. The purchaser from a mortgagor may avail himself of the statute in the same manner as the mortgagor might have done. McCarthy v. White, 21 Cal. 495; Coster v. Brown, 23 Cal. 142; Lord v. Morris, 18 Cal. 482. The period from which the statute begins to run is the breach of the condition of the mortgage. Rodman v. Hedden, 10 Wend. 498; Powell v. Smith, 8 Johns. 249; Odlin v. Greenleaf, 3 N. H. 270. In case of judgment by default, only constructive notice being had on the defendant, the property attached is alone liable. Conn v. Caldwell, 1 Gilman, 531; Boswell v. Dickerson [Case

No. 1,683]. And a special execution will, in Illinois, issue for the sale of the attached property. But if the defendant appear or is served, the judgment is in personam, and the plaintiff can have an execution generally and also a special one for the sale of the property. Conn v. Caldwell, supra. The general rule is that all persons interested in the mortgaged property, are necessary parties to a suit of foreclosure, and this includes all entitled to redeem. 1 Daniell, Ch. Pl. & Prac. 212 et seq.

At common law an indorsee of a promissory note is bound to prove the indorsement in the ordinary mode like any other handwriting, and that it was made by the person by whom it purports to have been made, and when the indorsement is special, that the indorsee is the person described in it. 3 Phil. Ev. 189. And in Illinois, where by statute the assignee in an action upon an assignable instrument is not bound to prove the assignment or signature unless they are put in issue by a verified plea, the statute is held to apply only to cases where the declaration is upon the instrument. When it is offered in evidence under the common counts the common law rule still obtains. Hall v. Freeman, 59 Ill. 54.